1 | EUGENE SCALIA, SBN 151540
  escalia@gibsondunn.com
2 | PAUL BLANKENSTEIN, *pro hac vice*
  pblankenstein@gibsondunn.com
3 | GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
4 | Washington, DC 20036-5306
Telephone: 202.955.8500
5 | Facsimile: 202.467.0539

6 | DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
7 | CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
8 | JENNAFER M. TRYCK, SBN 291088
  jtryck@gibsondunn.com
9 | SAMUEL E. ECKMAN, SBN 308923
  seckman@gibsondunn.com
10 | GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
11 | Los Angeles, CA 90071-3197
Telephone: 213.229.7000
12 | Facsimile: 213.229.7520

13 | Attorneys for Defendants UNIVERSITY OF SOUTHERN CALIFORNIA, USC RETIREMENT PLAN OVERSIGHT COMMITTEE, and LISA MAZZOCCO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALLEN L. MUNRO, DANIEL C. WHEELER, EDWARD E. VAYNMAN, JANE A. SINGLETON, SARAH GLEASON, REBECCA A. SNYDER, DION DICKMAN, COREY CLARK, and STEVEN L. OLSON,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, USC RETIREMENT PLAN OVERSIGHT COMMITTEE, and LISA MAZZOCCO,<br><br>*Defendants*. | CASE NO. 2:16-cv-06191-VAP-E<br><br>**REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING APPEAL OF DECISION ON MOTION TO COMPEL ARBITRATION**<br><br>The Hon. Virginia A. Phillips<br><br>**Hearing:**<br>Date: June 26, 2017<br>Time: 2:00 p.m.<br>Place: Courtroom 8A<br>350 West 1st Street<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A. USC's Appeal Presents A "Substantial" Question Of Law And USC Is Likely To Succeed On The Merits ........................................ 2

    B. USC Will Be Irreparably Injured Absent A Stay ................................ 6

    C. Plaintiffs Will Suffer No Prejudice If The Court Stays Proceedings ...... 10

    D. The Public Interest Favors A Stay ..................................................... 11

III. CONCLUSION ............................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alascom, Inc. v. ITT North Elec. Co.*,
   727 F.2d 1419 (9th Cir. 1984) .................................................................................. 7, 8

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .................................................................................................. 5, 6

*Aviles v. Quik Pick Express, LLC*,
   No. 15-05214-MWF, 2016 WL 6902458 (C.D. Cal. Jan. 25, 2016) ...................... 3, 8

*Bradberry v. T-Mobile USA, Inc.*,
   2007 WL 2221076 (N.D. Cal. Aug. 2, 2007) ............................................................... 8

*Britton v. Co-Op Banking Grp.*,
   916 F.2d 1405 (9th Cir. 1990) ................................................................................ 3, 12

*Brown v. Citicorp Credit Servs., Inc.*,
   No. 12-00062, 2013 WL 1760267 (D. Idaho Apr. 24, 2013) ...................................... 7

*Brown v. Wal-Mart Stores, Inc.*,
   No. 09-03339, 2012 WL 5818300 (N.D. Cal. Nov. 15, 2012) ................................. 4, 7

*Cesca Therapeutics Inc. v. SynGen Inc.*,
   No. 14-02085, 2017 WL 1174062 (E.D. Cal. Mar. 30, 2017) ................................. 5, 7

*Cherny v. AT&T, Inc.*,
   No. 09-03625-GW, 2010 WL 2572929 (C.D. Cal. Feb. 8, 2010) ............................... 8

*City of Oakland v. Holder*,
   961 F. Supp. 2d 1005 (N.D. Cal. 2013) ....................................................................... 4

*Del Rio v. CreditAnswers, LLC*,
   No. 10-00346, 2010 WL 3418430 (S.D. Cal. Aug. 26, 2010) ..................................... 7

*Ferguson v. Corinthian Colls.*,
   No. 11-00127-DOC, 2012 WL 27622 (C.D. Cal. Jan. 5, 2012) ................................ 12

*Glob. Live Events v. Ja-Tail Enters., LLC*,
   No. 13-8293-SVW, 2014 WL 1830998 (C.D. Cal. May 8, 2014) ............................ 11

**TABLE OF AUTHORITIES** (con't)

Page(s)

*Int'l Ass'n of Machinists & Aerospace Workers v. Aloha Airlines*,
    776 F.2d 812 (9th Cir. 1985) ........................................................................... 6

*Kaltwasser v. Cingular Wireless LLC*,
    No. 07-00411, 2010 WL 2557379 (N.D. Cal. June 21, 2010) ................................. 6

*Kwan v. Clearwire Corp.*,
    No. 09-01392, 2011 WL 1213176 (W.D. Wash. Mar. 29, 2011) .............................. 7

*Landwehr v. DuPree*,
    72 F.3d 726 (9th Cir. 1995) ........................................................................... 6

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ........................................................... 1, 2, 3, 4, 5, 11

*Li v. A Perfect Franchise, Inc.*,
    No. 10-01189, 2011 WL 2293221 (N.D. Cal. June 8, 2011) ................................. 3, 8

*Maxcrest Ltd. v. United States*,
    No. 15-80270, 2016 WL 6599463 (N.D. Cal. Nov. 7, 2016) ................................... 4

*Mohamed v. Uber Techs., Inc.*,
    115 F. Supp. 3d 1024 (N.D. Cal. 2015) .......................................................... 4, 10

*Morse v. Servicemaster Glob. Holdings, Inc.*,
    No. 10-00628, 2013 WL 123610 (N.D. Cal. Jan. 8, 2013) ..................................... 3

*Nken v. Holder*,
    556 U.S. 418 (2009) ............................................................................... 1, 2, 5

*O'Brien v. O'Laughlin*,
    557 U.S. 1301 (2009) (Breyer, J., in chambers) .................................................. 2

*Pokorny v. Quixtar Inc.*,
    No. 07-00201, 2008 WL 1787111 (N.D. Cal. Apr. 17, 2008) ............................ 10, 12

*Richards v. Ernst & Young LLP*,
    No. 08-04988, 2012 WL 92738 (N.D. Cal. Jan. 11, 2012) ..................................... 7

*Roe v. SFBSC Mgmt., LLC*,
    No. 14-03616, 2015 WL 1798926 (N.D. Cal. Apr. 17, 2015) ........................... 7, 9, 10

*Steiner v. Apple Computer, Inc.*,
    No. 07-04486, 2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ............................ 6, 12

# TABLE OF AUTHORITIES (con't)

Page(s)

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ............................................................................................ 1

*United States v. 2366 San Pablo Ave., Berkeley, Cal.*,
    2015 WL 525711 (N.D. Cal. Feb. 6, 2015) ........................................................ 4

*United States v. Bohol*,
    No. 02-00523, 2011 WL 2791358 (D. Haw. July 13, 2011) ........................... 2, 3

*Volkswagen Grp. of Am., Inc. v. Saul Chevrolet, Inc.*,
    No. 15-00505-ODW, 2015 WL 5680317 (C.D. Cal. Sept. 25, 2015) ................. 4

*Ward v. Estate of Goossen*,
    No. 14-03510, 2014 WL 7273911 (N.D. Cal. Dec. 22, 2014) ......................... 3, 8

*Winig v. Cingular Wireless LLC*,
    No. 06-04297, 2006 WL 3201047 (N.D. Cal. Nov. 6, 2006) ............................ 11

**Statutes**

9 U.S.C. § 16 ............................................................................................................ 7

28 U.S.C. § 1292(a)(1) ............................................................................................. 7

29 U.S.C. § 502(a)(2) ............................................................................................... 5

29 U.S.C. § 1109 ...................................................................................................... 1

29 U.S.C. § 1132(a)(2) ............................................................................................. 1

**Other Authorities**

*2015 Ninth Circuit Annual Report* 59, *available at* http://www.ce9.
    uscourts.gov/publications/AnnualReport2015.pdf ............................................. 9

**Rules**

Fed. R. Civ. P. 23(f) ................................................................................................. 4

Fed.R.Civ.P. 26(a)(1)(A) ....................................................................................... 10

Fed.R.Civ.P. 26(a)(1)(A)(iv) ................................................................................. 10

## I. INTRODUCTION

This Court has already indicated that it would "most likely honor [USC's] request" for a stay pending appeal of its order denying arbitration. (Dkt. 52 at 13.) This is consistent with well-established law. Because there is no "Ninth Circuit case law directly addressing th[e] issue" presented in USC's appeal (Dkt. 55 at 8), and because a resolution in the Ninth Circuit favorable to USC would mandate arbitration of Plaintiffs' claims (and not litigation before this Court), "it wouldn't make sense to litigate while the issue of litigating is up on appeal" (Dkt. 52 at 13).

This case plainly satisfies each of the four factors governing the issuance of a stay pending appeal as set out in *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). USC's appeal "presents a 'substantial' or 'serious' legal issue" (*id.* at 967) because there is no "Ninth Circuit case law directly addressing" the question "whether an arbitration agreement, signed by participants at the start of their employment, … can require participants who file suit on behalf of the plan under 29 U.S.C. §§ 1132(a)(2) and 1109 to submit their claims to arbitration" (Dkt. 55 at 8). And if this action were to proceed, and the Ninth Circuit reversed the order denying arbitration, USC will have been forced to *litigate* to defend a putative *class action*—notwithstanding Plaintiffs' agreement to *arbitrate* disputes on an *individual* basis. This would constitute a *double* irreparable harm, as the "shift from bilateral arbitration to class-action arbitration"—not to mention class-action *litigation*—"fundamental[ly] changes" the nature of the proceeding. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010). On the other hand, if the order is affirmed, the only harm Plaintiffs will have suffered is a delay in any relief they might ultimately collect—a harm that is fully compensable. Finally, the public interest favors a stay to promote the federal policy favoring arbitration, conserve judicial resources, and "ensur[e] that [the Ninth Circuit] can responsibly fulfill [its] role in the judicial process" by resolving a question of first impression. *Nken v. Holder*, 556 U.S. 418, 427 (2009).

Rather than meaningfully argue otherwise, Plaintiffs instead attempt to distort

the analysis, while at the same time minimizing the effect of continued litigation by insisting that USC will only be subject to "the same discovery Defendants would have to provide even if their appeal succeeded" (Opp. at 1)—*despite* their opposition to a limited stay (*id.* at 2 n.1), and their admission that they will seek discovery that "might not be required in arbitration" (*id.* at 8 n.7). Accordingly, this Court should grant USC's Motion to Stay.

## II. ARGUMENT

### A. USC's Appeal Presents A "Substantial" Question Of Law And USC Is Likely To Succeed On The Merits

The Ninth Circuit held in *Leiva-Perez* that although stay applicants must make "'a strong showing that [they are] likely to succeed on the merits,'" they "need not demonstrate that it is more likely than not that they will win on the merits." 640 F.3d at 966 (quoting *Nken*, 556 U.S. at 434). Rather, they need only show "***either***: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; ***or*** (b) a substantial case on the merits and that the balance of hardships tips sharply in the [applicant's] favor." *Id.* at 970 (emphases added).

Plaintiffs accuse USC of "attempt[ing] to dilute this factor by contending they need show only a 'minimum quantum' or 'reasonable probability or fair prospect' of success." (Opp. at 4 (quoting Mot. at 5).) But this language comes directly from *Leiva-Perez*, which concerned a motion to stay execution of a BIA removal order pending the *Ninth Circuit's* disposition of a petition for review, and *not* a motion to "stay pending a petition for writ of certiorari to the Supreme Court," as Plaintiffs contend (*ibid.*).[1] As the Ninth Circuit acknowledged, while "[t]here are many ways to

---

[1] If anything, Plaintiffs' view is exactly backward. "When the party is seeking an appeal to the United States Supreme Court, the question [of likelihood of success] focuses on whether 'it is reasonably likely that four Justices of this Court will vote to grant the petition for writ of *certiorari*, and that, if they do so vote, there is a fair prospect that a majority of the Court will conclude that the decision below was erroneous.'" *United States v. Bohol*, No. 02-00523, 2011 WL 2791358, at *2 (D. Haw. July 13, 2011) (quoting *O'Brien v. O'Laughlin*, 557 U.S. 1301, 1302–03 (2009) (Breyer, J., in chambers)). This is a particularly difficult burden to meet, given the

2

articulate the minimum quantum of likely success necessary to justify a stay—be it a 'reasonable probability' or 'fair prospect,' …; [or] that 'serious legal questions are raised,'" "these formulations are essentially interchangeable, and [] none of them demand a showing that success is more likely than not." *Id.* at 967–68.

Numerous district court opinions have employed these formulations in considering whether to stay litigation pending appeal of an order denying a motion to compel arbitration. For example, in *Aviles v. Quik Pick Express, LLC*, No. 15-05214-MWF, 2016 WL 6902458 (C.D. Cal. Jan. 25, 2016), Judge Fitzgerald noted that "the Ninth Circuit [has] indicated that, if a 'motion [to compel arbitration] presents a substantial question' alone, a district court may issue a stay pending appeal." *Id.* at *2 (quoting *Britton v. Co-Op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990)). As he explained: "This seems to be consistent with the first factor of the *Nken* test, which the Ninth Circuit has clarified does not require a demonstration that success on appeal is more likely than not; rather, the moving party need only show that its appeal 'raises substantial legal questions, or has a reasonable probability or fair prospect of success.'" *Id.* Even Plaintiffs' citations are in accord.[2]

USC has satisfied this prong of *Leiva-Perez*: <u>First</u>, this case plainly presents a "substantial" question and, as explained below, the balance of hardships tips sharply in favor of a stay. *Leiva-Perez*, 640 F.3d at 970. "Often a 'substantial case' is one that raises genuine matters of first impression within the Ninth Circuit." *Morse v. Servicemaster Glob. Holdings, Inc.*, No. 10-00628, 2013 WL 123610, at *3 (N.D. Cal.

---

"very small probability that the United States Supreme Court will grant a writ of *certiorari*." *Id.* Here, by contrast, the Ninth Circuit *must* hear USC's appeal, so the only remaining question is whether there is a fair prospect that it will reverse the order on the merits.

[2] *See, e.g.*, *Ward v. Estate of Goossen*, No. 14-03510, 2014 WL 7273911, at *2 (N.D. Cal. Dec. 22, 2014) ("In the Ninth Circuit, 'the minimum quantum of likely success necessary to justify a stay' can be articulated in several ways, including a 'reasonable probability,' a 'fair prospect,' raising 'serious legal questions,' or bringing 'a substantial case on the merits.'"); *Li v. A Perfect Franchise, Inc.*, No. 10-01189, 2011 WL 2293221, at *3 (N.D. Cal. June 8, 2011) ("As explained in *Leiva-Perez*, the party moving for a stay need not demonstrate that success on appeal is more likely than not in order to satisfy this factor. The moving party need only show that 'his appeal raises serious legal questions, or has a reasonable probability or fair prospect of success.'").

Jan. 8, 2013).  As this Court acknowledged, this case presents an issue of first impression concerning whether an individual plan participant can be bound to arbitrate claims asserting a violation of fiduciary duties under ERISA.  (*See* Dkt. 55 at 8.)  Although Plaintiffs contend that "[t]he novelty of Defendants' issue on appeal alone is not a strong showing of a likelihood of success" (Opp. at 5), the lone case they cite stands only for the proposition that a case does not merit a stay where "the argument is novel but completely frivolous" (*Volkswagen Grp. of Am., Inc. v. Saul Chevrolet, Inc.*, No. 15-00505-ODW, 2015 WL 5680317, at *4 (C.D. Cal. Sept. 25, 2015)).  Several other district courts in the Ninth Circuit have held that a novel issue warrants a stay.[3]

*Second*, and independently, USC has shown a strong likelihood of success on the merits.  *Leiva-Perez*, 640 F.3d at 970.  Although Plaintiffs suggest that USC is *per se* foreclosed from showing a likelihood of success simply because this Court denied its motion to compel arbitration (*see* Opp. at 1, 5), this argument ignores that USC "need not demonstrate that it is more likely than not that they will win on the merits" (*Leiva-Perez*, 640 F.3d at 966).  Plaintiffs' approach would require a district court to deny a motion to stay *every* order in which it ruled against the movant on the merits.  This, of course, is not the law.  To the contrary, the Supreme Court has observed that a stay is "not simply '[a]n historic procedure for preserving rights during the pendency of an appeal,' but also a means of ensuring that appellate courts can responsibly fulfill

---

[3]  *See Maxcrest Ltd. v. United States*, No. 15-80270, 2016 WL 6599463, at *2 (N.D. Cal. Nov. 7, 2016) ("'[U]nsettled questions of law present serious legal questions so as to demonstrate sufficient likelihood of success on a motion to stay'"); *City of Oakland v. Holder*, 961 F. Supp. 2d 1005, 1012 (N.D. Cal. 2013) ("The Court's prior decision represents its best assessment of whether the APA opens the door to collateral challenges to the civil forfeiture statute—an issue of first impression in this Circuit"); *Brown v. Wal-Mart Stores, Inc.*, No. 09-03339, 2012 WL 5818300, at *2 (N.D. Cal. Nov. 15, 2012) ("Plaintiff does not dispute that Defendant's Rule 23(f) petition presents a case of first impression to the Ninth Circuit.  This fact alone could support a finding that the first factor weighs in favor of a stay."); *United States v. 2366 San Pablo Ave., Berkeley, Cal.*, 2015 WL 525711, at *2 (N.D. Cal. Feb. 6, 2015) (granting a stay where "[t]he issue of Berkeley's standing is a serious legal question of first impression"); *Mohamed v. Uber Techs., Inc.*, 115 F. Supp. 3d 1024, 1031 (N.D. Cal. 2015) ("[T]he fact that one legal issue of first impression will have such a substantial impact on the outcome of Uber's appeal in this case militates in favor of staying this action.").

their role in the judicial process." *Nken*, 556 U.S. at 427 (citation omitted).  A standard by which "a stay would only be granted after the court in effect *decides* the merits," however, "does not so much preserve the availability of subsequent review as render it redundant." *Id.* at 432.  For this reason, the Ninth Circuit has held that "[a] more stringent requirement … would defeat the purpose of a stay, which is to give the reviewing court the time to 'act responsibly,' rather than doling out 'justice on the fly.'" *Leiva-Perez*, 640 F.3d at 967 (citing *Nken*, 556 U.S. at 427).[4]

Here, this Court's order rested on its conclusion that "Section 502(a)(2) claims are, by their nature, Plan claims." (Dkt. 55 at 12 (quotation marks omitted)).  But while the Court observed that a participant cannot "abandon[] something 'belonging to others'" (Dkt. 55 at 13), the arbitration agreements that Plaintiffs signed did nothing to extinguish the Plan's rights under Section 502(a)(2).  Instead, Plaintiffs agreed only to forego their *personal* right to proceed in a judicial forum in exchange for the mutual commitment to submit disputes to the "efficient, streamlined procedures" afforded by arbitration.  *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011).  Not only do Plaintiffs remain free to vindicate their (or the Plan's) rights in arbitration, but other interested parties—including the Secretary of Labor, successor fiduciaries, and participants or beneficiaries who did *not* sign an arbitration agreement—are free to pursue the Plan's claims in court.  *See* 29 U.S.C. § 502(a)(2).  Recognizing this distinction between the Plan's *substantive* rights under Section 502(a)(2), which an individual participant cannot waive, and the various *procedural* rights that vest in the participant himself, the Ninth Circuit has confirmed that, while "beneficiaries, participants, and fiduciaries of an ERISA plan ordinarily may bring an action for

---

[4] For the same reason, Plaintiffs' contention that "Defendants cannot meet their burden by relying on 'reasoning identical to their unsuccessful motion to compel arbitration'" is irrational.  (Opp. at 5 (citing *Cesca Therapeutics Inc. v. SynGen Inc.*, No. 14-02085, 2017 WL 1174062, at *3 (E.D. Cal. Mar. 30, 2017))).  Indeed, *Cesca* simply observed that defendants had signed a contract abrogating a prior arbitration agreement, such that, absent "recent decisions that have gone against [the court's] well-reasoned holding," their continued reliance on that meritless ground was unavailing.  2017 WL 1174062, at *3.  By sharp contrast here, this Court already recognized that there is no "Ninth Circuit case law directly addressing" the issue on appeal.  (Dkt. 55 at 8.)

Gibson, Dunn & Crutcher LLP

breach of fiduciary duty only on behalf of an ERISA covered plan," for procedural purposes "[t]he plaintiff in such actions … is not the plan itself but the fiduciary, beneficiary, or participant bringing suit." *Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995).

Accordingly, USC has made the requisite showing of likely success on appeal to satisfy *Leiva-Perez*.

## B. USC Will Be Irreparably Injured Absent A Stay

USC will be irreparably harmed in at least two distinct ways if this litigation proceeds pending the Ninth Circuit's resolution of its appeal:

*First*, USC will be forced to defend against Plaintiffs' claims in a putative class action, rather than the bilateral basis set forth in the arbitration agreements, thus "'sacrific[ing] the principal advantage of [bilateral] arbitration—its informality—and mak[ing] the process slower, more costly, and more likely to generate procedural morass than final judgment.'" (Mot. at 9 (citing *Concepcion*, 563 U.S. at 348)).

*Second*, USC will be denied the "'inexpensive and expeditious means of resolving … dispute[s]'" in arbitration, which will "'generally constitute irreparable harm.'" (Mot. at 8 (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Aloha Airlines*, 776 F.2d 812, 815 (9th Cir. 1985); *Steiner v. Apple Computer, Inc.*, No. 07-04486, 2008 WL 1925197, at *5 (N.D. Cal. Apr. 29, 2008))).

Plaintiffs ignore USC's first source of irreparable harm—the potential that they will be forced to proceed on a class or representative basis rather than the individual basis contemplated by the arbitration agreements. As the Supreme Court has acknowledged, "the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Concepcion*, 563 U.S. at 348. And because "the nature and extent of discovery permissible in private arbitration is fundamentally different from that allowed in class-action litigation" (*Kaltwasser v. Cingular Wireless LLC*, No. 07-00411, 2010 WL 2557379, at *2 (N.D.

Cal. June 21, 2010)), and "[t]he burdens associated with discovery in a putative class action are substantially greater than in an individual arbitration" (*Kwan v. Clearwire Corp.*, No. 09-01392, 2011 WL 1213176, at *3 (W.D. Wash. Mar. 29, 2011)), courts regularly stay such actions pending appeal.[5]

At the same time, Plaintiffs attempt to obscure the unequivocal case law supporting USC's second source of irreparable harm. The Ninth Circuit has squarely held that being forced to litigate arbitrable issues has "'serious, perhaps irreparable'" consequences for a litigant. *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984). And while Plaintiffs attempt to evade *Alascom* on the ground that it "concerns only the issue of whether an order staying arbitration is appealable, not whether district court proceedings should be stayed pending appeal" (Opp. at 9), they fail to explain how that fact undermines its applicability here. In *Alascom*, the district court denied a motion to compel arbitration. 727 F.2d at 1421. Because the order *predated* the right to an automatic interlocutory appeal of such orders (*see* 9 U.S.C. § 16), the Ninth Circuit could only review the order if the requirements of 28 U.S.C.

---

[5] *See also Roe*, 2015 WL 1798926, at *3 ("The plaintiffs argue and cite cases to support the proposition that litigation costs do not constitute 'irreparable harm' under the stay analysis. As BSC rightly points out, though, all but one of the plaintiffs' cases are individual rather than collective suits. They are therefore importantly different."); *Brown*, 2012 WL 5818300, at *4 (granting stay where "[t]he certified class in this case is estimated to encompass over 22,000 individuals," such that "[t]he sheer size of the class makes it likely that Defendant will incur significant discovery and other litigation expenses while its appeal to the Ninth Circuit is pending"); *Richards v. Ernst & Young LLP*, No. 08-04988, 2012 WL 92738, at *3 (N.D. Cal. Jan. 11, 2012) (finding irreparable injury where "the case is just now entering the stage in which it will proceed as a class action," thus "chang[ing] both the character of the litigation and the potential scale of expenses"); *Brown v. Citicorp Credit Servs., Inc.*, No. 12-00062, 2013 WL 1760267, at *2 (D. Idaho Apr. 24, 2013) (concluding that defendant would suffer irreparable harm absent a stay where plaintiff "seeks to represent a class of 'well in excess of 500,'" because "discovery . . . will be far more wide-ranging and expensive than the discovery conducted in an individual arbitration case"); *Del Rio v. CreditAnswers, LLC*, No. 10-00346, 2010 WL 3418430, at *4 (S.D. Cal. Aug. 26, 2010) (finding irreparable injury because "[t]he difference in litigation expenses between a two-party case and a class action is substantial"); *cf. Cesca*, 2017 WL 1174062, at *5 (distinguishing the individual action brought by plaintiffs from class actions where, "'if a class is certified, both the character of the litigation and the potential scale of expenses will change dramatically'").

§ 1292(a)(1) were met—including that "the interlocutory order might have a 'serious, perhaps irreparable, consequence.'" *Id.* at 1422. The Court observed that "where an order grants a stay of arbitration, one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes. If that party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever." *Id.* It then concluded: "We find this consequence 'serious, perhaps irreparable' and 'effectually challenged' only by immediate appeal." *Id.*

The irreparable harm that accompanies litigation of an arbitrable issue pending final judgment, recognized by *Alascom*, is the same irreparable harm that will accompany litigation of this case pending resolution of the instant appeal. For this reason, notwithstanding Plaintiffs' assertion otherwise,[6] courts have repeatedly applied *Alascom* to *Leiva-Perez*'s irreparable harm analysis. *See, e.g., Aviles*, 2016 WL 6902458, at *3–4 (noting that "the Ninth Circuit has held that if a party 'must undergo the expense and delay of a trial before being able to appeal [an order denying a motion to compel arbitration], the advantages of arbitration—speed and economy—are lost forever,'" and therefore concluding that "this second factor weighs in favor of granting a stay"); *Cherny v. AT&T, Inc.*, No. 06-03625-GW, 2010 WL 2572929, at *1 (C.D. Cal. Feb. 8, 2010) ("[T]he right to arbitrate would be devalued, if not rendered meaningless, if litigation proceeded apace."); *Ward*, 2014 WL 7273911, at *4 ("The contrast, in time and expense, between the arbitration process as described by

---

[6] Plaintiffs cite *Li* and *Bradberry v. T-Mobile USA, Inc.*, 2007 WL 2221076 (N.D. Cal. Aug. 2, 2007), to support the proposition that "courts do not apply *Alascom* to the irreparable harm analysis" (Opp. at 9), but those cases hold only that *Alascom* does not *mandate* a stay where the *Leiva-Perez* factors are not otherwise satisfied. *See Li*, 2011 WL 2293221, at *5 ("While *Alascom* holds that an order staying arbitration is appealable, it does so because 'one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes.' This holding depends upon the existence of a valid arbitration agreement, *which is precisely what this Court found does not exist here*" (emphasis added)); *Bradberry*, 2007 WL 2221076, at *3 ("It might be reasonable to infer that that the Ninth Circuit's holding [in *Alascom*] leads to the conclusion that denying a stay pending appeal would necessarily cause irreparable harm, if it were not for the Ninth Circuit's holding six years later in *Britton*[,] that whether to stay pending appeal is within the discretion of the district court.").

Defendants and the process of litigation in federal court is substantial," and so if "'the Ninth Circuit reverses the [Arbitration] Order, all litigation efforts expended in the interim will have been wasted, and the speed, economy, and specialized nature of the arbitration procedure claimed to be operative by Defendants will have been lost.'").

Plaintiffs further suggest that USC will not be irreparably harmed "because this case is still in its early stages, [and] Defendants' appeal is likely to resolve before the discovery phase of this case extends beyond initial document production and review." (Opp. at 8.) They offer no support for this assertion. To the contrary, Plaintiffs' Answering Brief is not due until October 30, 2017 (*see* No. 17-55550, Dkt. 1), while the median time interval between the filing of Appellees' last brief and disposition of a case on the merits is 15.8 months (*2015 Ninth Circuit Annual Report* 59, *available at* http://www.ce9. uscourts.gov/publications/AnnualReport2015.pdf (last visited June 2, 2017)). Thus, the Ninth Circuit may not dispose of USC's appeal until well into 2019.

At the same time, Plaintiffs' contention that USC will not suffer irreparable harm because "Defendants will have to produce committee meeting minutes and materials, Plan documents, and service provider contracts regardless of whether this case is litigated or arbitrated," and that "[e]ven in arbitration, Plaintiffs would be entitled to engage in written discovery, command document production, and take depositions" (Opp. at 7–8), *assumes* that the Ninth Circuit will resolve USC's appeal before this case proceeds past these discovery activities.[7] In any event, Plaintiffs' argument is belied by their concession that much of the discovery they have already sought "are not core fiduciary documents and might not be required in arbitration" (*id.* at 8 n.7). Even if it were, "[d]iscovery is not the only consideration" when assessing a motion to stay an order denying arbitration. *Roe v. SFBSC Mgmt., LLC*, No. 14-03616,

---

[7] Plaintiffs complain that USC's L.R. 7-3 statement "inappropriate[ly]" divulged the discovery they requested (Opp. at 2 n.1), while at the same time reciting these requests as proof that USC will not suffer irreparable injury if forced to litigate pending appeal. USC fully complied with its obligation to attempt to avoid bringing this Motion. Further, in response to Plaintiffs' argument (*id.* at 6 n. 4), USC has already served Plaintiffs with copies of Plan documents and service-provider agreements, which USC had offered as a compromise to avoid this dispute.

2015 WL 1798926, at *3 (N.D. Cal. Apr. 17, 2015).  Rather, "[l]itigation presents opportunities for ancillary practice that do not exist in arbitration.  That judicial and arbitral channels differ in ways that make the latter more time- and cost-effective is exactly what underwrites the strong federal policy favoring arbitration."  *Id.*

### C. Plaintiffs Will Suffer No Prejudice If The Court Stays Proceedings

Against the irreparable injuries USC would suffer absent a stay, Plaintiffs identify two hardships that they claim would attend a stay.  Neither is persuasive:

*First*, Plaintiffs argue that "[t]he delay contemplated by Defendants 'may affect the availability of witnesses and documents or the quality of testimony.'"  (Opp. at 9, 10.)  But Plaintiffs' professed concerns about these topics are belied by their willingness to stipulate to a stay so long as USC produced certain *documents*, including "the documents that govern the subject retirement plans, contracts with anyone who provided services to the plans, and the minutes and material of the fiduciaries who administered the plans or monitored plan investments" (Dkt. 63-1 ¶ 5), and "insurance policies within the scope of Fed.R.Civ.P. 26(a)(1)(A)(iv) and an exchange of disclosures under Fed.R.Civ.P. 26(a)(1)(A)" (*id.* at ¶ 6).  Plaintiffs never conditioned their agreement to stay proceedings on the availability of *witnesses*.  In any event, USC is aware of its obligations to preserve evidence, and so Plaintiffs' concerns, even if sincere, are unavailing.  *See Mohamed*, 115 F. Supp. 3d at 1034–35 (concluding that there was no risk that evidence would be lost where "the parties are all aware of their obligations to preserve evidence"); *Pokorny*, 2008 WL 1787111, at *2 ("[A] stay pending appeal will not prejudice Plaintiff[s'] ability to conduct discovery and prosecute the action should it go forward after the appeal.").

*Second*, Plaintiffs claim that "Defendants are accused of breaching ERISA's fiduciary duties, which are the 'highest known to the law.'"  (Opp. at 10.)  But they concede that their suit does not attempt to enjoin any *ongoing* alleged violations of USC's fiduciary duties, but rather "to recover their Plans' losses" that have already been incurred.  (*Id.*)  And although they contend that "the calculation of [these losses]

will be much more difficult in the future than if the participants were able to just recover their losses now and invest in their retirement savings" (*id.*), they do not explain why this is so. To the contrary, they have had no difficulty alleging a particular dollar value of their alleged injury, notwithstanding the fact that their claims "cover a six-year period beginning August 17, 2010." (*Id.*)

Of course, USC does not deny that Plaintiffs would rather not wait for the Ninth Circuit to resolve USC's appeal. But this is *always* the case. And as the Ninth Circuit has held, "[h]ere, too, *Nken* emphasized that we are to consider the particulars of each individual case." *Leiva-Perez*, 640 F.3d at 970. "[A]lthough petitioners have the ultimate burden of justifying a stay of removal, … *Nken*'s admonition that we cannot base stay decisions on assumptions and 'blithe assertion[s],' applies with equal force to the government's contentions in opposing stay requests." *Id*. Because Plaintiffs offer only "assumptions" and "blithe assertions" of hardship, this factor supports a stay.

### D.  The Public Interest Favors A Stay

Plaintiffs do not cite any public interest disfavoring a stay. They *do* suggest that "[i]f anything, the public interest compels expediting these proceedings, concerning fiduciary duties that are the 'highest known to law.'" (Opp. at 11.) But USC's fiduciary duties run only to Plan participants and beneficiaries, each of whom Plaintiffs purport to represent in this putative class action. As another court in this District has observed, "[t]he public interest will not be affected by the outcome of [a] private dispute between two business entities, nor by how quickly it is resolved." *Glob. Live Events v. Ja-Tail Enters., LLC*, No. 13-8293-SVW, 2014 WL 1830998, at *8 (C.D. Cal. May 8, 2014). And although there is a general "public interest in 'vindicating consumer rights,'" a stay typically "will not materially impact that interest." *Winig v. Cingular Wireless LLC*, No. 06-04297, 2006 WL 3201047, at *4 (N.D. Cal. Nov. 6, 2006).

Rather than identify any particular public interest opposing a stay, Plaintiffs insist that USC's "statutory right to an interlocutory appeal" and "[t]he 'strong federal policy favoring arbitration'" are "not enough" to support a stay. (Opp. at 10.) But the

11

only cases they support for that proposition merely observe that the federal policy favoring arbitration does not *require* a stay in all cases. See *Britton*, 916 F.2d at 1412 (rejecting a rule that would "allow a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration" because whether to grant a stay "is a proper subject for the exercise of discretion by the trial court"); *Ferguson v. Corinthian Colls.*, No. 11-00127-DOC, 2012 WL 27622, at *5 (C.D. Cal. Jan. 5, 2012) ("Allowing the blanket federal policy to *force* a stay pending appeal *whenever* arbitrability is at issue would force the four-factor *Hilton* test to collapse into a single factor that would always favor staying proceedings pending appeal … ." (emphases added)). USC does not ask for such a categorical rule here. Instead, it contends only that the public interest counsels in favor of a stay, as does each of the other three factors under *Leiva-Perez*. Ample case law supports this position.[8]

### III. CONCLUSION

As this Court has acknowledged, there is no "Ninth Circuit case law directly addressing th[e] issue" resolved by its ruling and now challenged in USC's appeal (Dkt. 55 at 8), and so "it wouldn't make sense to litigate while the issue of litigating is up on appeal" (Dkt. 52 at 13). If USC is forced to litigate pending resolution of its appeal, it will be irreparably injured, while Plaintiffs will not suffer any prejudice if the relief that they seek (if any is obtained) is delayed. Accordingly, USC respectfully requests that the Court grant its motion and stay all proceedings pending that appeal.

Dated: June 12, 2017            Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:      */s/ Christopher Chorba*
         Christopher Chorba

---

[8] See *Pokorny v. Quixtar Inc.*, No. 07-00201, 2008 WL 1787111, at *2 (N.D. Cal. Apr. 17, 2008) ("The speed and efficiency of ADR are the foundation for a strong federal policy favoring arbitration over litigation, which would be contravened by requiring the parties to litigate while the appeal is pending. The fourth factor—the public interest—therefore also favors a stay."); *Steiner*, 2008 WL 1925197, at *6 (finding that the public interest "strongly favors granting a stay" where "there was a strong public policy favoring arbitration" and "a stay would avoid the parties and the Court wasting taxpayer resources on a litigation which might be mooted on appeal").