FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALLEN L. MUNRO, individually and as representatives of a class of participants and beneficiaries on behalf of the University of Southern California Defined Contribution Retirement Plan and the University of Southern California Tax Deferred Annuity Plan; DANIEL C. WHEELER, individually and as representatives of a class of participants and beneficiaries on behalf of the University of Southern California Defined Contribution Retirement Plan and the University of Southern California Tax Deferred Annuity Plan; EDWARD E. VAYNMAN, individually and as representatives of a class of participants and beneficiaries on behalf of the University of Southern California Defined Contribution Retirement Plan and the University of Southern California Tax | No. 17-55550

D.C. No.
2:16-cv-06191-VAP-E


OPINION |

2   MUNRO V. UNIVERSITY OF SOUTHERN CALIFORNIA

Deferred Annuity Plan; JANE
A. SINGLETON, individually
and as representatives of a
class of participants and
beneficiaries on behalf of the
University of Southern
California Defined
Contribution Retirement Plan
and the University of
Southern California Tax
Deferred Annuity Plan;
SARAH GLEASON,
individually and as
representatives of a class of
participants and beneficiaries
on behalf of the University of
Southern California Defined
Contribution Retirement Plan
and the University of
Southern California Tax
Deferred Annuity Plan;
REBECCA A. SNYDER,
individually and as
representatives of a class of
participants and beneficiaries
on behalf of the University of
Southern California Defined
Contribution Retirement Plan
and the University of
Southern California Tax
Deferred Annuity Plan; DION

DICKMAN; COREY CLARK;
STEVEN L. OLSON,
             *Plaintiffs-Appellees*,

                    v.

UNIVERSITY OF SOUTHERN
CALIFORNIA; USC
RETIREMENT PLAN
OVERSIGHT COMMITTEE;
LISA MAZZOCCO,
             *Defendants-Appellants*.

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief Judge, Presiding

Argued and Submitted May 15, 2018
San Francisco, California

Filed July 24, 2018

Before:  Sidney R. Thomas, Chief Circuit Judge, Michelle
T. Friedland, Circuit Judge, and Thomas S. Zilly,[*] District
Judge.

Opinion by Chief Judge Thomas

---

[*] The Honorable Thomas S. Zilly, United States District Judge for the
Western District of Washington, sitting by designation.

4   MUNRO V. UNIVERSITY OF SOUTHERN CALIFORNIA

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's denial of defendants' motion to compel arbitration of collective claims for breach of fiduciary duty in the administration of two ERISA plans.

The plaintiffs, current and former employees of the University of Southern California, and participants in the two ERISA plans, were required to sign arbitration agreements as part of their employment contracts. The panel concluded that the dispute fell outside the scope of the arbitration agreements because the parties consented only to arbitrate claims brought on their own behalf, and the employees' claims were brought on behalf of the ERISA plans.

### COUNSEL

Eugene Scalia (argued) and Paul Blankenstein, Gibson Dunn & Crutcher LLP, Washington, D.C.; Debra Wong Yang, Christopher Chorba, Jennafer M. Tryck, and Samuel Eckman, Gibson Dunn & Crutcher LLP, Los Angeles, California; for Defendants-Appellants.

Michael A. Wolff (argued), James Redd, and Jerome J. Schlichter, Schlichter Bogard & Denton LLP, St. Louis, Missouri, for Plaintiffs-Appellees.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Andrew J. Pincus, Archis A. Parasharami, Brian D. Netter, and Travis Crum, Mayer Brown LLP, Washington, D.C.; Warren Postman and Janet Galeria, U.S. Chamber Litigation Center, Washington, D.C.; for Amicus Curiae Chamber of Commerce.

Mary Ellen Signorille and William Alvarado Rivera, AARP Foundation Litigation, Washington, D.C., for Amici Curiae AARP and AARP Foundation.

## OPINION

THOMAS, Chief Judge:

We consider in this appeal whether current and former employees of the University of Southern California may be compelled to arbitrate their collective claims for breach of fiduciary responsibility against the Defendants (collectively, "USC") for the administration of two ERISA plans.  Under the circumstances presented by this case, we conclude that the district court properly denied USC's motion to compel arbitration.

I

Allen Munro and eight other current and former USC employees ("Employees") participate in both the USC Retirement Savings Program and the USC Tax-Deferred Annuity Plan (collectively, the "Plans").  In this putative class action lawsuit, they allege multiple breaches of fiduciary duty in administration of the Plans.

Each of the individual Employees was required to sign an arbitration agreement as part of her employment contract. The nine Employees signed five different iterations of USC's arbitration agreement. Consistent among the various agreements is an agreement to arbitrate all claims that either the Employee or USC has against the other party to the agreement. The agreements expressly cover claims for violations of federal law.

In their putative class action lawsuit, the Employees sought financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries, including but not limited to: a determination as to the method of calculating losses; removal of breaching fiduciaries; a full accounting of Plan losses; reformation of the Plans; and an order regarding appropriate future investments.

USC moved to compel arbitration, arguing that the Employees' agreements bar the Employees from litigating their claims on behalf of the Plan. It also requested the district court to compel arbitration on an individual, rather than class, basis because the parties did not specifically agree to class arbitration. The district court denied USC's motion, determining that the arbitration agreements, which the Employees entered into in their individual capacities, do not bind the Plans because the Plans did not themselves consent to arbitration of the claims. USC timely appealed.

The district court had jurisdiction under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331. We have jurisdiction under 9 U.S.C. § 16(a)(1)(C), which authorizes the immediate appeal from an order denying an application to compel arbitration. We review the issues presented de novo. *Mohamed v. Uber Techs., Inc.*, 848 F.3d

1201, 1207 (9th Cir. 2016) (denial of a motion to compel arbitration); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1021 (9th Cir. 2016) ("district court decisions about the arbitrability of claims" and "the interpretation and meaning of contract provisions" (citation and alteration omitted)); *Cmty. Bank of Ariz. v. G.V.M. Trust*, 366 F.3d 982, 984 (9th Cir. 2004) (a "district court's interpretation and construction of . . . federal law").

## II

The Federal Arbitration Act ("FAA") "was enacted . . . in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). It "reflect[s] both a 'liberal federal policy favoring arbitration,'" *id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)), "and the 'fundamental principle that arbitration is a matter of contract,'" *id.* (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). By the FAA's terms, "a written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

"[T]he party resisting arbitration bears the burden[s] of proving that the claims at issue are unsuitable for arbitration . . . ." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone*, 460 U.S. at 24–25.

Where there is no conflict between the FAA and the substantive statutory provision, "the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. There is no room for discretion, as the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

III

Turning to the particular arbitration agreements entered into between the Employees and USC, we must decide "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119 (citation omitted). Because the parties consented only to arbitrate claims brought on their own behalf, and because the Employees' present claims are brought on behalf of the Plans, we conclude that the present dispute falls outside the scope of the agreements.

A

We cannot, of course, compel arbitration in the absence of an agreement to arbitrate; to do so would be to defeat "the FAA's primary purpose of ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,

489 U.S. 468, 479 (1989).  "[T]he FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'"  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info.*, 489 U.S. at 479).

B

To determine whether the agreements extend to the present controversy, we look first to the text of the agreements.  *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 796 (9th Cir. 2017).

We recently considered a similar issue in another legal context—whether a standard employment arbitration agreement covered *qui tam* claims brought by the employee on behalf of the United States under the False Claims Act ("FCA").  *Welch*, 871 F.3d 791.  In *Welch*, the arbitration agreement extended to any claims "either [the employee] may have against the Company . . . or the Company may have against [the employee]."  *Id.* at 794.  Because "the underlying fraud claims asserted in a FCA case belong to the government and not to the relator," we held that the claims were not claims that the employee had against the employer and therefore not within the scope of the arbitration agreements.  *Id.* at 800 & n.3.

Here, too, the parties agreed to arbitrate "all claims . . . that Employee may have against the University or any of its related entities . . . and all claims that the University may have against Employee."  As in *Welch*, this language does not extend to claims that other entities have against the University.  As in *Welch*, we cannot interpret the catch-all clause agreeing to arbitrate "[a]ny claim that otherwise would

have been decidable in a court . . . for violation of any federal . . . statute" to cover claims belonging to other entities.  *See Welch*, 871 F.3d at 797–98 (interpreting agreement to arbitrate "all disputes" based on "any . . . federal law" as limited to disputes between the employee and the employer).

The language of the arbitration agreements here is not meaningfully distinguishable from that considered in *Welch*. The issue, then, is whether claims for breach of fiduciary duty brought under ERISA must be treated the same as *qui tam* claims brought under the FCA.

C

There is no shortage of similarities between *qui tam* suits under the FCA and suits for breach of fiduciary duty under ERISA.  Most importantly, both *qui tam* relators and ERISA § 502(a)(2) plaintiffs are not seeking relief for themselves.  A party filing a *qui tam* suit under the FCA seeks recovery only for injury done to the government, *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771–72 (2000), and a plaintiff bringing a suit for breach of fiduciary duty similarly seeks recovery only for injury done to the plan.  *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008); *accord id.* at 261 (Thomas, J., concurring).

Out of this basic similarity arises a related principle—neither the *qui tam* relator nor the ERISA § 502(a)(2) plaintiff may alone settle a claim because that claim does not exist for the individual relator or plaintiff's primary benefit.  In *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999), we held that a plaintiff seeking relief under ERISA § 409(a) may not settle a claim on behalf of a plan, but rather can only settle if the plan consents to the

settlement. Unsurprisingly, given the similarities between FCA and ERISA fiduciary breach claims, we reached a similar conclusion in a *qui tam* action brought under the FCA where the government had initially declined to intervene, leaving the relator to conduct the action himself. *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 720 (9th Cir. 1994). But there, unlike here, the government had only a right to be heard on the validity of the settlement, not "an absolute right to block the settlement." *Id.* at 720–23.

Significantly, these principles laid the foundation for our holding in *Welch*, where we held a *qui tam* FCA claim to be outside the scope of an arbitration agreement because the claim was not one that the employee "may have against [the employer]." 871 F.3d at 800. Our holding was compelled by our recognition that the government, rather than the relator, stands to benefit most from the litigation. *Id.* And we reached our conclusion even though the relator is entitled to more than a nominal share of the government's recovery. *Id.* Moreover, we were unconcerned that the FCA provides that the relator brings suit not only "for the United States Government" but also "for the person*." 31 U.S.C. § 3730(b). And even though in a breach-of-fiduciary duty suit under ERISA, "the cause of action belong[s] to the individual plaintiff," *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006), the same is true of a *qui tam* suit under the FCA where the government declines to intervene, *see* 31 U.S.C. § 3730(b)(4)(B) (providing that, in such circumstances, the "right to conduct the action" lies with the relator). *See also Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995) (holding in ERISA context that the statute of limitations begins to run when the individual plaintiff learns of the alleged violations); *United States ex rel. Hyatt v. Northrop*

*Corp.*, 91 F.3d 1211, 1217–18 (9th Cir. 1996) (holding similarly in the FCA context).

Relying on *LaRue*, USC argues that individuals may seek individual recovery in the context of defined contribution plans, such as the Plans here, because defined contribution plans comprise individual accounts. However, *LaRue* cannot bear the weight USC places on it. In *LaRue*, the Supreme Court held that an individual may bring an ERISA claim alleging breach of fiduciary duty even if the claim pertains only to her own account and seeks relief for losses limited to that account. 552 U.S. at 256. In doing so, the Court made clear that it had not reconsidered its longstanding recognition that it is the plan, and not the individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan. *Id.* ("[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.").

Even if *LaRue* held the meaning USC attributes to it, it would not control this case. The claims brought by the Employees arise from alleged fiduciary misconduct as to the Plans in their entireties and are not, as in *LaRue*, limited to mismanagement of individual accounts. *Id.* at 250–51 (explaining that the lawsuit arose from the fiduciary's alleged failure to carry out the participant-plaintiff's directions). As we have noted, the Employees seek financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries, including a determination as to the method of calculating losses, removal of breaching fiduciaries, a full accounting of Plan losses, reformation of the Plans, and an

order regarding appropriate future investments.  The relief sought demonstrates that the Employees are bringing their claims to benefit their respective Plans across the board, not just to benefit their own accounts as in *LaRue*.

In short, there is no principled distinction to be drawn between this case and *Welch*.  If anything, because recovery under ERISA § 409(a) is recovery singularly for the plan, *compare* 29 U.S.C. § 1109(a), *with* 31 U.S.C. § 3730(b), the *qui tam* relator has a stronger stake in the outcome of an FCA case than does a § 502(a)(2) plaintiff in an ERISA claim.  The ERISA § 409(a) claims in this suit are not claims an "Employee may have against the University or any of its related entities," and the arbitration agreements cannot be stretched to apply to them.[1]

---

[1] The Employees also argue that claims for breach of fiduciary duty seeking a remedy under ERISA 409(a) are inarbitrable as a matter of law, citing our decision in *Amaro v. Continental Can Co.*, 724 F.2d 747 (9th Cir. 1984).  In *Amaro*, we held that ERISA's mandated "minimum standards [for] assuring the equitable character of [ERISA] plans" could not be satisfied in an arbitral proceeding.  724 F.2d at 752.  As a three-judge panel, *Amaro* binds us unless we conclude that the case is "clearly irreconcilable" with intervening binding authority.  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).  USC contends that *Amaro* is "clearly irreconcilable" with intervening Supreme Court case law and, therefore, we should overrule it.  Although the Supreme Court has never expressly held that ERISA claims are arbitrable, there is considerable force to USC's position.  *See, e.g.*, *Comer v. Micor, Inc.*, 436 F.3d 1098, 1100–01 (9th Cir. 2006) (discussing the issue in dicta).  However, given our decision that the claims asserted in this case fall outside the arbitration clauses in the employee agreements, it is unnecessary to decide that question here.  Therefore, we leave the issue of  *Amaro*'s viability for another day.

14   MUNRO V. UNIVERSITY OF SOUTHERN CALIFORNIA

IV

In sum, the claims asserted on behalf of the Plans in this case fall outside the scope of the arbitration clauses in individual Employees' general employment contracts. Therefore, the district court properly denied the motion to compel arbitration.  We need not—and do not—reach any other issues urged by the parties.

**AFFIRMED.**