EUGENE SCALIA, SBN 151540
  escalia@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
JENNAFER M. TRYCK, SBN 291088
  jtryck@gibsondunn.com
SAMUEL ECKMAN, SBN 308923
  seckman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

Attorneys for Defendants UNIVERSITY OF SOUTHERN CALIFORNIA, USC RETIREMENT PLAN OVERSIGHT COMMITTEE, and LISA MAZZOCCO

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALLEN MUNRO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA, *et al.*,<br><br>Defendants. | CASE NO. 2:16-cv-06191-VAP-E<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND MOTION TO STRIKE DEMAND FOR JURY TRIAL**<br><br>Hon. Virginia A. Phillips<br><br>Hearing<br>Date: August 26, 2019<br>Time: 2:00 PM<br>Place: Courtroom 8A<br>360 West 1st Street<br>Los Angeles, CA 90012 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................. 1

II. ARGUMENT .................................................................................................... 2

    A. Plaintiffs Must Satisfy The Same Pleading Standards Applicable To Any Other Claim ................................................................. 2

    B. Plaintiffs Fail To State A Claim For Breach Of The Duty Of Loyalty (Counts I, III, and V) ............................................................. 3

    C. Plaintiffs Fail To State A Claim For Breach Of The Duty Of Prudence (Counts I, III, and V) .......................................................... 6

    D. Plaintiffs Fail To State A Claim That USC Engaged In Prohibited Transactions (Counts II, IV, and VI) ................................. 8

    E. Plaintiffs Fail To State A Claim Against Individual Defendants ............ 10

    F. Plaintiffs Fail To State A Claim That USC Breached The Duty To Monitor Fiduciaries (Count VII) ..................................................... 11

III. THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND .............. 12

IV. CONCLUSION ............................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alas v. AT&T Inc.*,
　No. 17-08106-VAP-RAOx, 2019 WL 1744847 (C.D. Cal. Feb. 25, 2019) .................................................................................................................... 11

*Alas v. AT&T Inc.*,
　No. 17-08106-VAP-RAOx, 2018 WL 6133648 (C.D. Cal. Oct. 29, 2018) .............................................................................................................. 10, 11

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ........................................................................... 1, 2, 3, 6

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ......................................................................................1

*Braden v. Wal-Mart Stores, Inc.*,
　588 F.3d 585 (8th Cir. 2009) .........................................................................6

*Burnell v. Swift Transp. Co.*,
　No. 10-00809-VAP-OPx, 2014 WL 12586436 (C.D. Cal. Mar. 27, 2014) ..................................................................................................... 4, 5

*Camp v. Pac. Fin. Grp.*,
　956 F. Supp. 1542 (C.D. Cal. 1997) ............................................................12

*Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*,
　No 16-9321-DSF-MRWx, 2017 WL 2992739 (C.D. Cal. May 11, 2017) ............................................................................................................6

*Cunningham v. Cornell Univ.*,
　2017 WL 4358769 (S.D.N.Y. Sept. 29, 2017) ..............................................9

*Donovan v. Mazzola*,
　716 F.2d 1226 (9th Cir. 1983) .......................................................................6

*In re First Am. Corp. ERISA Litig.*,
　No. 07-01357-JVS, 2009 WL 536254 (C.D. Cal. Feb. 9, 2009) ................12

*Hecker v. Deere & Co.*,
　556 F.3d 575 (7th Cir. 2009) .........................................................................9

*JIPC Mgmt., Inc. v. Incredible Pizza Co.*,
　No. 08-04310-MMM-PLAx, 2008 WL 11336396 (C.D. Cal. Aug. 26, 2008) ............................................................................................................4

*Marshall v. Northrop Grumman Corp.*,
　No. 16-06794-AB, 2018 WL 1406703 (C.D. Cal. Feb. 15, 2018) .............12

*NagraVision SA v. NFL Enterps., LLC*,
   No. 17-03919-AB-SKx, 2018 WL 1807285 (C.D. Cal. Mar. 9, 2018) ..................... 5

*Nguyen v. Sessions*,
   901 F.3d 1093 (9th Cir. 2018) ................................................................................ 5

*Romero v. Nokia*,
   No. 12-6260-PJH, 2013 WL 5692324 (N.D. Cal. Oct. 15, 2013) ............................ 5

*Sacerdote v. NYU*,
   2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) ......................................................... 4

*Solis v. Tomco Auto Prods., Inc.*,
   No. 12-00618-SJO, 2012 WL 12920838 (C.D. Cal. July 10, 2012) ...................... 12

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) .................................................................................. 2

*Spinelli v. Gaughan*,
   12 F.3d 853 (9th Cir. 1993) .................................................................................. 12

*Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt., Inc.*,
   712 F.3d 705 (2d Cir. 2013) ................................................................................... 6

*Sweda v. Univ. of Penn.*,
   923 F.3d 320 (3d Cir. 2019) ........................................................................ 4, 6, 7, 9

*Thomas v. Oregon Fruit Prods.*,
   228 F.3d 991 (9th Cir. 2000) ................................................................................ 12

*Tussey v. ABB, Inc.*,
   746 F.3d 327 (8th Cir. 2014) .............................................................................. 6, 8

*United States v. Bailey*,
   444 U.S. 394 (1980) ................................................................................................ 4

*White v. Chevron Corp.*,
   No. 16-0793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2916) .......................... 5

**Statutes**

29 U.S.C. § 1002(14)(B) ................................................................................................ 8

29 U.S.C. § 1104(a)(1) ................................................................................................... 3

29 U.S.C. § 1106(a)(1)(A) ............................................................................................. 9

29 U.S.C. § 1108(b) ....................................................................................................... 9

**Rules**

C.D. Cal. L.R. 7-3 ........................................................................................................ 11

Fed. R. Civ. P. 8(a) ........................................................................................................ 2

iii

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Opposition confirms that their complaint is nothing more than a series of conclusory allegations that fail to satisfy the core factual elements of their causes of action. Ignoring Supreme Court authority to the contrary, Plaintiffs assert that their pleading burden under ERISA is different than for other legal claims, requiring not factual allegations supporting a plausible inference of wrongdoing, but rather mere disagreement with plan management.

As USC explained in its Motion, Plaintiffs' Second Amended Complaint ("SAC") fails to state a plausible claim for relief. Although Plaintiffs contend the Plans would have incurred lower costs had they been managed differently, they do not suggest USC acted for the purpose of benefitting itself or third parties at the expense of participants and beneficiaries, nor do they plausibly allege USC followed an imprudent decision-making process. Instead, Plaintiffs take issue with the *results* of that process. But even if that were sufficient to state a claim (it is not), each of those results has "'obvious alternative explanation[s],'" and Plaintiffs fail to allege "more by way of factual content to 'nudg[e]' [their] claim[s] . . . 'across the line from conceivable to plausible.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 682–83 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567, 570 (2007)).

Plaintiffs do not seriously dispute this. Instead, they insist that it is immaterial, going so far as to assert that the pleading standard applied in every other area of law should yield to some undefined, ERISA-only standard. At the same time, Plaintiffs insist that the Court must ignore the groundswell of judicial decisions rejecting materially similar claims for no other reason than that they come from district courts. Because these arguments are as indefensible as the allegations they are meant to defend, the Court should grant USC's motion to dismiss.

Finally, the Court should strike Plaintiffs' jury demand because Ninth Circuit caselaw—repeatedly confirmed by other district courts—confirms that there is no jury right under ERISA. Plaintiffs' arguments to the contrary ignore this binding authority.

## II. ARGUMENT

### A. Plaintiffs Must Satisfy The Same Pleading Standards Applicable To Any Other Claim

Plaintiffs begin their Opposition not by arguing that the SAC satisfies the pleading requirements articulated by the Supreme Court in *Twombly* and *Iqbal*, but rather by insisting that those requirements have no application here. (*See* Opp. at 3–7.) According to Plaintiffs, "*Twombly* rejected a complaint that alleged misconduct that was 'just as much in line with a wide swath of rational and competitive business strategy' by applying a pleading standard that is *specific to and limited to antitrust cases*." (*Id.* at 5 (emphasis added).) They then insist that "[t]hat stricter pleading standard is not appropriate for ERISA fiduciary breach actions." (*Id.* at 6.)

But the United States Supreme Court considered—and rejected—this argument in *Iqbal*. There, the plaintiff argued that "*Twombly* should be limited to pleadings made in the context of an antitrust dispute," and thus should not govern his discrimination claim. *Iqbal*, 556 U.S. at 684. The Supreme Court disagreed, explaining that "[t]his argument is not supported by *Twombly* and it is incompatible with the Federal Rules of Civil Procedure," which "govern[] the pleading standard 'in all civil actions and proceedings in the United States district courts.'" *Id.*. Because the "decision in *Twombly* expounded the pleading standard for '*all* civil actions,'" *id.* (emphasis added), it indisputably applies to Plaintiffs' ERISA claims.

Nor can Plaintiffs avoid *Twombly* on the ground that "'the relevant facts are known only to the defendant.'" (Opp. at 4.) As Plaintiffs' cases make clear, while a complaint need not *prove* facts sufficient to state a claim, it must *allege* them. *See, e.g.*, *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) ("'The *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant.'"). But that is precisely what the SAC has failed to do. And Plaintiffs cannot hide behind the fact that "[t]he Court has allowed discovery only as to

class certification." (Opp. at 4 n.4.) After all, the very purpose of a Rule 12(b)(6) motion is to avoid "unlock[ing] the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

It is absurd for Plaintiffs to claim that they cannot satisfy the pleading standards that govern every other type of claim as a matter of course. As participants in the Plans, they received regular updates regarding the Plans' administration, and if they found these updates wanting or had any questions after reviewing them, Plaintiffs had ready access to the Plans' administrators. Plaintiffs' inability to satisfy *Twombly* and *Iqbal* under the facts presented here provides no reason to suspect ERISA plaintiffs will be unable to satisfy that standard as a general matter; it simply shows that Plaintiffs do not have a meritorious claim. And their failure certainly provides no basis for Plaintiffs' claim that holding them to the same pleading standards that govern any other legal claim "would mean 'the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer.'" (*Id.* at 5; *see also id.* at 4.) In fact, the rights at issue in *Iqbal* are at least as "crucial" as those here. *See Iqbal*, 556 U.S. at 668 (reciting the plaintiff's allegation that, during his imprisonment, he was "kept in lockdown 23 hours a day, spending the remaining hour outside [his] cell[] in handcuffs and leg irons accompanied by a four-officer escort," because he was Muslim).

As Plaintiffs note, their counsel has extensive experience litigating ERISA claims. (*See, e.g.*, Opp. at 2 n.1.) Surely they are aware of the facts they must plead to state a claim—and would have pleaded them, if such facts existed. They do not.

**B. Plaintiffs Fail To State A Claim For Breach Of The Duty Of Loyalty (Counts I, III, and V)**

ERISA requires fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries," and for the "exclusive purposes of (i) providing benefits to participants and their beneficiaries[] and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). As USC explained in its Motion, Plaintiffs fail to state a claim for breach of the duty of loyalty because they allege no

facts from which to infer that USC did not act "solely in the interest of" participants and with the "exclusive purpose[] of" providing benefits to them. (Mot. at 6–8.)

Plaintiffs do not disagree, but rather assert that breach of the duty of loyalty is a strict liability offense for which "[n]o scienter or intent is required." (Opp. at 12.) They do not cite a single case for this proposition.[1] Instead, they reason that "[b]y its plain language, the statute requires that a fiduciary act solely in the interest of the plan's participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable administrative costs." (*Id.*) But the requirement that a fiduciary act with a particular purpose *is* a scienter requirement. As the Supreme Court has explained, the "mental state[] of 'purpose'" is satisfied if "a person . . . 'consciously desires that result, whatever the likelihood of that result happening from his conduct.'" *United States v. Bailey*, 444 U.S. 394, 404 (1980).

Numerous cases confirm that a loyalty claim cannot survive a motion to dismiss where "the[] allegations do not include facts suggesting that [the] defendant entered into the transaction for the purpose of (rather than merely having the effect of) benefitting [other parties]." *Sacerdote v. NYU*, 2017 WL 3701482, at *6 (S.D.N.Y. Aug. 25, 2017). USC cited nine such cases in its Motion, all involving materially similar ERISA claims against universities. (Mot. at 8 & n.2.) Plaintiffs do not even attempt to respond to these cases. Instead, they insist that this Court must blind itself to this authority because these decisions come from fellow district courts, and it is "improper" to "rely . . . on district court decisions as authority"—citing, ironically, a district court decision. (Opp. at 13 (citing *Burnell v. Swift Transp. Co.*, No. 10-00809-VAP-OPx, 2014 WL 12586436, at *4 (C.D. Cal. Mar. 27, 2014)).) But while district court cases are not binding, they are persuasive, and courts frequently rely on them in

---

[1] Plaintiffs do cite the Third Circuit's decision in *Sweda v. Univ. of Penn.*, 923 F.3d 320 (3d Cir. 2019), for the proposition that "[t]he law expects more than good intentions." (Opp. at 11.) While this is true of the duty of *prudence*, nothing in *Sweda* suggests it is true of the duty of *loyalty*. More importantly, that "good intentions" are not a defense does not mean that *no* scienter is required.

4

the absence of binding authority.[2] *Burnell* itself "consider[ed] [the district court's] reasoning, but after careful consideration, decline[d] to apply it in th[at] case, which c[ame] before the Court in a different procedural posture." 2014 WL 12586436, at *4.

The SAC fails to state a claim for breach of the duty of loyalty because it does not allege facts that admit a plausible inference that USC acted with an intent to benefit third parties or itself at the expense of participants. In fact, Plaintiffs' Opposition repeats the same allegations that underlie their prudence claim. (*See* Opp. at 12–13 (alleging, *inter alia*, that USC breached the duty of loyalty by "allow[ing] the Plans' recordkeepers to put all of their own proprietary investment options in the Plans," employing "multiple recordkeepers" who received "revenue sharing payments," and "lock[ing] the Plans into using TIAA's CREF Stock Account").) But if a plaintiff could base a loyalty claim on the same facts as a prudence claim (as Plaintiffs attempt here), it would "render[] the loyalty elements of § 1104(a)(1)(A) superfluous and meaningless." (Opp. at 11 (citing *Nguyen v. Sessions*, 901 F.3d 1093, 1097 (9th Cir. 2018)).) It is thus unsurprising that courts have rejected similar attempts to bootstrap loyalty claims onto allegations sounding in imprudence. *See, e.g.*, *White v. Chevron Corp.*, No. 16-0793-PJH, 2016 WL 4502808, at *5 (N.D. Cal. Aug. 29, 2016) ("Because the complaint does not differentiate between breach of the duty of prudence and breach of the duty of loyalty, and includes no separate allegations to support the duty of loyalty claim, the court finds the allegations in the complaint insufficient to sustain the disloyalty claim."); *Romero v. Nokia*, No. 12-6260-PJH, 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (dismissing loyalty claim that "'hinge[d] entirely' on the prudence-based allegations").

---

[2] *See, e.g.*, *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, No. 08-04310-MMM-PLAx, 2008 WL 11336396, at *24 n.150 (C.D. Cal. Aug. 26, 2008) ("In the absence of binding precedent, the court finds persuasive the reasoning of numerous district courts that have disregarded the presumption in preliminary injunction proceedings."); *NagraVision SA v. NFL Enterps., LLC*, No. 17-03919-AB-SKx, 2018 WL 1807285, at *5 (C.D. Cal. Mar. 9, 2018) ("While the northern district court's decision is not binding on this Court, the Court finds the analysis persuasive and well-reasoned.")

## C. Plaintiffs Fail To State A Claim For Breach Of The Duty Of Prudence (Counts I, III, and V)

"In evaluating whether a fiduciary has acted prudently, we . . . focus on the process by which it makes its decisions rather than the results of those decisions." *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, No 16-9321-DSF-MRWx, 2017 WL 2992739, at *3 (C.D. Cal. May 11, 2017) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).[3] This inquiry is governed by "an objective standard." *Tussey v. ABB, Inc.*, 746 F.3d 327, 335 (8th Cir. 2014). Under this standard, Plaintiffs fail to state a claim for breach of the duty of prudence.

The vast majority of the factual allegations offered by Plaintiffs in support of their prudence claims concern only the results of USC's decision-making process. (*See, e.g.*, Opp. at 14–17 (alleging USC imprudently "allowed the Plans' four recordkeepers to stock the Plans with over 350 of their proprietary investment options," "included in the Plans . . . higher-cost shares when the same mutual funds were available to the Plans in lower-cost shares," and that "options that underperformed their benchmarks . . . were not removed").) These allegations, standing on their own, provide no basis upon which a factfinder could infer an imprudent process. Even if results could, in the abstract, support such an inference, they do not do so here because each of the challenged results has a rational, sensible, and prudent explanation. (*See* Mot. at 8–21.)[4] Plaintiffs' Opposition does not contest

---

[3] *See also Pension Benefit Guaranty Corp. ex rel. St. Vincent Catholic Med. Ctrs. Retirement Plan v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) ("[T]his standard 'focus[es] on a fiduciary's conduct in arriving at an investment decision, not on its results, and ask[s] whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'"); *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).

[4] Plaintiffs' responses do not establish a basis for an actionable claim. For example, they fault USC for "not explain[ing] what th[e] reason might be" for "locking in" the TIAA-CREF Stock Account (Opp. at 19), but the SAC itself alleged that "TIAA-CREF *required* that the CREF Stock Account . . . be put in the plan" in order to gain access to other TIAA-CREF vehicles (SAC ¶ 119), and that those TIAA options were among the most popular in the Plans (*id.* ¶ 144). Plaintiffs similarly note that while "the Plans' investment expenses ranged from 0.04% to 1.37%"—expenses found not to give rise to an inference of imprudence in other cases—there is no set "fee range that insulates plan fiduciaries from liability for breach of fiduciary duty.'" (Opp. at 18.)

these alternative explanations, but merely reiterates that Plaintiffs do not like the choices the Plans made (rather than challenge the process used to arrive at them).

After spending nearly four pages asking the Court to infer an imprudent process from results, Plaintiffs change tack and insist that "[t]he inference of an imprudent process from Plaintiffs' allegations does not even depend *solely* on the imprudent results of that process" (Opp. at 17 (emphasis added)), rattling off allegations that purportedly go to USC's process. But these allegations largely deal with USC's modification of the Plans in 2016, from which Plaintiffs ask the Court to infer that the Plans were imprudently managed *before* that time. (*See, e.g.*, Opp. at 15 ("While Defendants suggest that providing over 350 investment options was necessary to meet the 'size and diversity of its investor base,' they do not explain why that was no longer necessary in 2016 when they reduced the options to 34.").)

But ERISA "afford[s] discretion" to fiduciaries "because '[t]here are no universally accepted and enduring theories of financial markets or prescriptions for investment that can provide clear and specific guidance.'" *Sweda*, 923 F.3d at 333. Thus, all that can be inferred from the fact USC changed the Plans is that USC *was* monitoring the Plans—and thereby engaging in the prudent process expected of an ERISA fiduciary. Meanwhile, nothing about USC's decision to offer more investment options before 2016 suggests imprudence because "[a]llegedly offering too many investment options for participants does not suffice for a breach of ERISA's duty of prudence." *Short v. Brown Univ.*, 320 F. Supp. 3d 363, 369 (D.R.I. 2018) (199 options). And in any event, Plaintiffs fail to allege that the Plans incurred lower fees after consolidating the Plans' investment options in 2016.

Plaintiffs may disagree with USC's decisions, but disagreement does not

---

But the problem is that Plaintiffs have not alleged facts from which to infer that these facially reasonable expenses are in fact unreasonable. Plaintiffs rely on *Sweda* (Opp. at 18–19), but that case sustained the claims at issue there only by improperly "declin[ing] to extend *Twombly*'s antitrust pleading rule to breach of fiduciary duty claims under ERISA" (*Sweda*, 923 F.3d at 326). As discussed above, that ruling cannot be reconciled with *Iqbal*, 556 U.S. at 678–79 (*supra* at 2–3). This Court is bound by the Supreme Court, not the Third Circuit.

establish imprudence. More importantly, the allegations in Plaintiffs' SAC do not do so either. These allegations do not plausibly allege that USC followed an imprudent process, especially in light of the "obvious alternative explanations" for each of USC's decisions. And because the duty of prudence is governed by an objective standard, "'[e]ven if a trustee failed to conduct an investigation before making a decision, he is insulated from liability if a *hypothetical* prudent fiduciary would have made the same decision anyway.'" *Tussey*, 746 F.3d at 335 (emphasis added).

### D. Plaintiffs Fail To State A Claim That USC Engaged In Prohibited Transactions (Counts II, IV, and VI)

Plaintiffs fare no better with their allegations that USC engaged in prohibited transactions under 29 U.S.C. § 1106(a)(1). That provision bars fiduciaries from engaging in a transaction with a party in interest "if he knows or should know that such a transaction constitutes a direct or indirect . . . (A) sale or exchange, or leasing, of any property between the plan and a party in interest; . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1).

*First*, all of Plaintiffs' prohibited-transactions claims fail because the Plans' recordkeepers are not "parties in interest." Although ERISA defines a party in interest as "a person providing services to such plan," 29 U.S.C. § 1002(14)(B), it goes on to clarify that "[i]f any money or other property of an employee benefit plan is invested in securities issued by an investment company registered under the Investment Company Act of 1940 such investment shall not by itself cause such investment company . . . to be deemed to be a fiduciary or a party in interest," *id.* § 1002(21)(B). Each of the parties named above is registered under the Investment Company Act of 1940.

Plaintiffs attempt to sidestep the clear language of the statute by drawing a line between the *recordkeepers* that administer participants' Plan accounts and the *investment companies* with which those accounts are invested. (*See* Opp. at 20 ("Plaintiffs do not contend the Plans' mutual funds are the parties in interest. They

contend the recordkeepers are parties in interest because they provide services to the Plans.").)  But Plaintiffs' case is premised on the assertion that the recordkeepers and the investments offered by them are one and the same.  Indeed, Plaintiffs allege that "Defendants squandered th[eir] leverage by allowing the Plans' conflicted third party service providers—TIAA, Vanguard, Fidelity, and Prudential—to . . . collect unlimited asset-based compensation from *their own proprietary products*."  (SAC ¶ 4 (emphasis added); *see also id.* ¶¶ 119, 169.)  Meanwhile, Plaintiffs' assertion that "many of the Plans' investments are not even mutual funds" (Opp. at 20) is neither here nor there, as Sections 1002 and 1106 never even mention mutual funds.

*Second*, all of Plaintiffs' prohibited-transaction claims also fail because they fall within ERISA's safe harbor insofar as they reflect "reasonable arrangements with a party in interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."  29 U.S.C. § 1108(b). Plaintiffs note that there is a split of authority regarding whether plaintiffs must plead that the safe harbor does not apply or whether it is an affirmative defense that defendants must prove (Opp. at 20 & n.11), urging—without explanation—that the latter view is correct.  But as the Third Circuit has reasoned, "it is improbable that § 1106(a)(1), which was designed to prevent 'transactions deemed likely to injure the . . . plan' and 'self-dealing,' would prohibit ubiquitous service transactions and require a fiduciary to plead reasonableness as an affirmative defense under § 1008 to avoid suit."  *Sweda*, 923 F.3d at 336.  If Plaintiffs' view were adopted, even the most frivolous claims could proceed past the pleadings.  And because Plaintiffs do not allege any facts regarding the services provided in return for the challenged revenue-sharing payments, they fail to allege that such payments were not reasonable.

*Third*, Plaintiffs fail to state a claim under Count IV because they do not allege USC engaged in a transaction involving the "sale or exchange, or leasing, of any property between the plan and a party in interest," 29 U.S.C. § 1106(a)(1)(A), or "assets of the plan[s]," *id.* § 1106(a)(1)(D), because revenue-sharing is paid by the

investment manager, and so does not constitute Plan property. *See Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009); *Cunningham v. Cornell Univ.*, 2017 WL 4358769, at *9 (S.D.N.Y. Sept. 29, 2017) ("Plaintiffs' claims . . . fail because revenue sharing payments drawn from mutual fund assets and paid to TIAA-CREF and Fidelity are not transactions involving plan assets, and payments for recordkeeping services do not constitute an impermissible 'sale or exchange' of property as that term is commonly understood."). Plaintiffs assert that "the prohibited transactions are not just the revenue sharing payments, but allowing Plan assets to be invested in options that would result in the generation of revenue sharing payments that, unmonitored, resulted in excessive compensation of the recordkeepers." (Opp. at 21.) But "allowing" Plan assets to be invested in a particular way is not a "transaction." In any event, this assertion is contradicted by the SAC, which clearly alleged that "[t]hese transactions occurred each time the Plans *paid fees to* TIAA, Fidelity, Vanguard, and Prudential in connection with the Plans' investments in funds *that paid revenue sharing* to TIAA, Fidelity, Vanguard, and Prudential." (SAC ¶ 317 (emphases added).)[5]

### E.  Plaintiffs Fail To State A Claim Against Individual Defendants

The SAC does not state a claim against individual defendants because it does not "allege any facts about their conduct—even omitting allegations grounding the Court's personal jurisdiction." (Mot. at 23.) Plaintiffs' only response is that it is "a disputed issue" whether "a committee can be a defendant in such an action (thus obviating the need to join committee members as defendants)," such that "in cases where the defendant-fiduciaries do not take responsibility for the liability of fiduciary committee members, other courts have allowed the joinder of committee members as fiduciary-defendants." (Opp. at 22.) But this is completely non-responsive: Even if Plaintiffs were "allowed" to name individual members as defendants, they must still

---

[5]  Plaintiffs note that USC "does not address the fact that Count IV includes a claim under § 1106(a)(1)(C)" (Opp. at 21), which applies to the "furnishing of goods, services, or facilities between the plan and a party in interest." While this claim does not require the use of Plan assets, it does require that the recordkeepers be "parties in interest"—which they are not. *See supra* at 9.

allege facts stating a claim against those members.  While Plaintiffs assert that other courts have allowed the joinder of committee members (*see* Dkt. 139 at 4), they cite only one case that actually considered the propriety of such joinder.  That case was *Alas v. AT&T Inc.*, No. 17-08106-VAP-RAOx, 2018 WL 6133648 (C.D. Cal. Oct. 29, 2018), in which this Court *dismissed* claims against individual committee members where the plaintiffs "alleged no facts demonstrating any plausible liability for individual defendants." *Id.* at *7.  The Court dismissed the amended complaint on similar grounds:  "The TAC pleads no acts of the Individual Defendants that allegedly breached their fiduciary duties, but merely notes that they were member of the Benefit Plan Investment Committee for varying lengths of time." *Alas v. AT&T Inc.*, 2019 WL 1744847, at *5 (C.D. Cal. Feb. 25, 2019).  The same reasoning applies here.

In any event, Plaintiffs concede that "when the named fiduciaries do undertake that responsibility [for the liability of committee members], it is not necessary to join individual committee members as defendants." (Opp. at 22.)  Plaintiffs claim that "USC still has not undertaken that responsibility" (*id.*), but they have no basis for this assertion because Plaintiffs have never so much as *asked* USC whether it would do so.  Instead, they added more than 15 individuals to this litigation—and opposed a motion to dismiss—on nothing more than an unfounded assumption about what USC would say.  This not only raises concerns under Rule 11, but imposes considerable hardship on ordinary people—not to mention the Court, which is forced to deal with baseless claims that a simple meet-and-confer would have avoided.  *See* C.D. Cal. L.R. 7-3.  In point of fact, USC does accept responsibility for any liability of individual committee members, and so the parties now apparently agree that the Court should grant USC's Motion with respect to all claims against those defendants.

### F. Plaintiffs Fail To State A Claim That USC Breached The Duty To Monitor Fiduciaries (Count VII)

Plaintiffs agree that their failure-to-monitor claim is derivative of their other claims.  (Opp. at 22.)  Since those claims fail, so too does this one.

### III. THE COURT SHOULD STRIKE PLAINTIFFS' JURY DEMAND

USC responds here to Plaintiffs' separately filed opposition to the motion to strike. (Dkt. 163.) That brief misconstrues binding precedent in arguing that "[t]he Ninth Circuit has not yet directly addressed the issue of whether a participant pursuing a § 1132(a)(2) [§ 502(a)(2)] claim to recover plan losses is entitled to a jury trial." (Mot. to Strike Opp. at 2.) In fact, the Ninth Circuit has repeatedly, and unambiguously, held that "plan participants and beneficiaries are not entitled to jury trials for claims brought under, . . . section 502 of ERISA." *Thomas v. Oregon Fruit Prods.*, 228 F.3d 991, 996 (9th Cir. 2000) (citing *Spinelli v. Gaughan*, 12 F.3d 853 (9th Cir. 1993)). In fact, as Plaintiffs seek to do here, the plaintiff in *Thomas* attempted to distinguish this longstanding precedent on the ground that earlier suits sought relief under other subsections of § 502. The Ninth Circuit rejected this distinction, holding that this precedent "applied equally to all claims by participants and beneficiaries seeking remedies under section 502." *Id.*

For this reason, courts in this Circuit routinely hold that "[t]here is no right to a jury trial in claims under ERISA for breach of fiduciary duty." *Camp v. Pac. Fin. Grp.*, 956 F. Supp. 1542, 1552 (C.D. Cal. 1997). And they specifically strike jury demands in § 502(a)(2) cases. *See, e.g., Solis v. Tomco Auto Prods., Inc.*, No. 12-00618-SJO, 2012 WL 12920838, at *2–3 (C.D. Cal. July 10, 2012); *In re First Am. Corp. ERISA Litig.*, No. 07-01357-JVS, 2009 WL 536254, at *2 (C.D. Cal. Feb. 9, 2009). As Judge Birotte recently concluded in a case raising nearly identical claims, "the overwhelming weight of authority in the federal courts holds that actions under ERISA § 502(a)(2) by participant-beneficiaries and fiduciaries to remedy, as in this instance, alleged violations of ERISA § 409(a) are equitable in nature for purposes of the Seventh Amendment jury trial right." *Marshall v. Northrop Grumman Corp.*, No. 16-06794-AB, 2018 WL 1406703, at *6 (C.D. Cal. Feb. 15, 2018).

### IV. CONCLUSION

The Court should dismiss the SAC and strike Plaintiffs' Jury Demand.

Dated: August 12, 2019

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Christopher Chorba*
 Christopher Chorba

Attorneys for Defendants