RICHARD J. DOREN, SBN 124666
  rdoren@gibsondunn.com
DEBRA WONG YANG, SBN 123289
  dwongyang@gibsondunn.com
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
HEATHER L. RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
JENNAFER M. TRYCK, SBN 291088
  jtryck@gibsondunn.com
SAMUEL E. ECKMAN, SBN 308923
  seckman@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ALLEN L. MUNRO, *et al*.<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA and USC RETIREMENT PLAN OVERSIGHT COMMITTEE,<br><br>　　　　　Defendants. | CASE NO. 2:16-cv-06191-VAP-E<br><br>**DEFENDANTS' STATEMENT IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Hearing:　March 27, 2023<br>Time:　　2:00 PM<br>Place:　　Courtroom 8A<br>　　　　　350 West 1st Street<br>　　　　　Los Angeles, CA 90012<br>Judge:　　Hon. Virginia A. Phillips |

Gibson, Dunn & Crutcher LLP

DEFENDANTS' STATEMENT IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT
CASE NO. 2:16-CV-06191-VAP-E

Defendants join in the Joint Motion for Preliminary Approval of Class Settlement (Dkt. 362) and respectfully request that the Court approve the settlement as fair, reasonable, and adequate.

As discussed in the Motion, a district court may approve a class settlement if it concludes that the settlement as a whole is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In determining the fairness, reasonableness, and adequacy of a proposed class settlement, the Ninth Circuit has considered the following non-exclusive factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Villages, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Notably, "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Plaintiffs' Memorandum discusses several of these factors (*see* Dkt. 363), but Defendants submit this separate brief to address the risks of further litigation.

Over the six-year course of this hard-fought litigation, Defendants substantially narrowed the scope and value of the claims in this case. Plaintiffs filed the operative complaint on July 12, 2019, asserting broad claims against USC, the Retirement Plan Oversight Committee, and individual committee members. (Dkt. 149.) On Defendants' motion, the Court struck Plaintiffs' demand for a jury trial, dropped individual Committee members as defendants, and dismissed Plaintiffs' claims for disloyalty under 29 U.S.C. § 1104(a)(1)(A) and prohibited transactions under 29 U.S.C. § 1106(a)(1). (Dkt. 175 at 6, 10–13.) The remaining claims were that Defendants violated 29 U.S.C. § 1104(a)(1)(B) by allegedly causing the Plans to pay "excessive" recordkeeping fees

and offering "imprudent" investment options in the Plans' lineup. (*Id.* at 6–9, 10–11.) Defendants moved to exclude Plaintiffs' expert opinions regarding alleged "prudent investment alternatives," and the Court granted the Motion. (Dkt. 317 at 8–12.) In that order, the Court explained that Plaintiffs' experts' "hindsight-driven methodology" improperly "relie[d] on information that would not have been available to plan fiduciaries evaluating investment options at the time." (*Id.* at 10.) The Court also excluded Plaintiffs' subsequent attempts to offer alternative damages models for this theory, thereby eliminating approximately 86% of the damages Plaintiffs sought in this case and limiting them to their recordkeeping fees claim for $50 million. (Dkt. 355.) Although the Court did not reject this remaining "recordkeeping fee" theory, it raised several concerns about the Plaintiffs' expert offered in support of that claim. (Dkt. 317 at 18–19 (noting that Defendants raised "valid concerns" about the comparisons used by Plaintiffs' expert (Ty Minnich) for benchmarking recordkeeping fees).)

As Plaintiffs acknowledge, "[p]revailing at trial itself was far from certain," and "the Court's decisions regarding Plaintiffs' experts essentially rejected Plaintiffs' theory of damages on imprudent investment options and cast doubt on their method for calculating recordkeeping damages." (Dkt. 363 at 13.) As a result, even if "Plaintiffs could have succeeded on proving liability at trial," they might still "recover[] no, or limited, losses for the Plans." (*Id.*) Plaintiffs also rightly acknowledge that "[r]egardless of what damages (if any) the Court would have awarded after trial, any actual payment to Class Members would have had to wait until the conclusion of a lengthy appellate period, which could have resulted in a reversal of judgment and the need for another trial." (*Id.*)

That said, there were risks to both sides. Defendants are confident that if this litigation were to continue, they would prevail at trial on Plaintiffs' remaining claims. And they vigorously dispute all allegations of wrongdoing, fault, liability, or damage of any kind to Plaintiffs and the class, and any assertion that they engaged in any actionable

conduct. Nevertheless, Defendants have agreed to resolve the case to avoid the expenses, uncertainties, delays, and other risks inherent in continued litigation.

This proposed settlement was the product of extensive, arm's-length negotiations facilitated by an experienced mediator over several months, and the proposed settlement provides substantial, non-reversionary monetary compensation to Plaintiffs and the class. (*See* Dkt. 362-1.) None of the factors identified in *In re Bluetooth Headseat Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), as indicia of collusion is present here: (1) there is no "clear sailing agreement," as Defendants explicitly reserve the right to contest Plaintiffs' request for attorneys' fees; (2) there is no "reverter that returns unclaimed" funds to Defendants (Dkt. 362-1 §§ 2.29, 6.13); and (3) the class is receiving the vast majority of the settlement funds in the form of distributions directly into their tax-deferred USC retirement accounts (and former participants will receive a check or rollover into another tax-deferred account) (*id.* §§ 6.4–6.6).

The parties have not agreed to an award of attorneys' fees, expenses, and class representative awards, and instead Plaintiffs' counsel agreed to submit this issue to the Court for decision. (Dkt. 362-1 §§ 7.1–7.2.) Defendants expressly reserved their right to object to and oppose class counsel's requests for attorneys' fees, expenses, and class representative awards on all grounds.

Finally, the parties left a remaining issue in the Settlement Agreement relating to the timing of settlement payments to later agreement. (*See* Dkt. 362-1 at 13.) But since that time, the parties have confirmed that Defendants will make payment within 15 business days of the Court's preliminary and final approval orders. Specifically, Defendants will deposit (1) the first settlement payment of $1,000,000 into the Qualified Settlement Fund within 15 business days of either entry of the preliminary approval order or establishment of the escrow account (whichever is later), and (2) the final payment of $12,050,000 within 15 business days of entry of the Court's final approval order and judgment.

    For all of these reasons, Defendants respectfully request that the Court enter the Proposed Preliminary Approval Order (Dkt. 363-2).

Dated:   March 6, 2023　　　　　　　　　GIBSON, DUNN & CRUTCHER LLP

By:　　*/s/ Christopher Chorba*
　　　　　　Christopher Chorba

Attorneys for Defendants