**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Allen L. Munro et al,

Plaintiffs,

v.

University of Southern California et al,

Defendants.

Case No. 2:16-cv-06191-VAP-Ex

**Order GRANTING Defendants' Motion for Preliminary Approval of Class Action Settlement (Doc. Nos. 362, 363)**

Plaintiffs Allen L. Munro et al. ("Plaintiffs") filed a Motion for Preliminary Approval of Class Settlement ("Motion") on March 27, 2023. (Doc. Nos. 362, 363.)  Defendants University of Southern California et al. ("Defendants") did not file an opposition.

Having considered the papers filed in support of the Motion, the Court GRANTS the Motion.

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs are current or former employees of Defendant University of Southern California ("USC") and participate or have participated in the USC Defined Contribution Retirement Plan and/or the USC Tax-Deferred Annuity Plan (collectively, the "Plans").  On August 17, 2016, Plaintiffs filed a Class

1

Action Complaint alleging that Defendants breached their fiduciary duties in relation to their administration of the Plans.  (Doc. No. 1.)

In the six years that followed, the parties engaged in extensive discovery and motion practice.  Plaintiffs reviewed over 1,260,000 pages of documents produced by USC and various third parties, and the parties took and defended the depositions of each of the eight named plaintiffs, eight fact witnesses, and eight expert witnesses.  (Motion at 4.)  The parties fully briefed a motion to compel arbitration, (Doc. No. 47), two motions to stay pending an appeal of the order denying the motion to compel, (Doc. No. 58, 84), a motion to certify class, (Doc. No. 150), a motion to dismiss, (Doc. No. 155), a motion to strike the demand for a jury trial, (Doc. No. 156), and multiple motions in limine (Doc. No. 264, 273, 325, 326).

On July 2, 2019, the parties participated in a mediation session with David Geronemous of JAMS.  (Doc. No. 148.)  On June 28, 2022, the parties participated in a second mediation session with Robert Meyer of JAMS.  (Doc. No. 263.)  The parties continued to engage in settlement negotiations from December 2022 to January 2023.  (Motion at 5.)

The trial was set to begin on January 24, 2023 at 8:30 a.m.  (Doc. No. 356.)  On the evening before trial, the parties notified the Court that they had reached a settlement in principle.  (Doc. No. 360.)  By then, the parties had designated 3137 exhibits and 25 witnesses.  (Doc. Nos. 333, 335, 336.)

United States District Court
Central District of California

On February 23, 2023, the parties agreed to the Class Action Settlement Agreement ("Settlement Agreement" or "SA") currently before the court.  (Doc. No. 362-1.)  The Court summarizes the terms of that agreement below.

## B.  Settlement Class

The proposed Settlement Class is defined as:

All participants and beneficiaries of the University of Southern California Defined Contribution Retirement Plan and the University of Southern California Tax-Deferred Annuity Plan from August 17, 2010 through December 31, 2022, excluding the members of the Retirement Plan Oversight Committee.

(SA § 2.9.)  The proposed class consists of thousands of current and former participants of the Plans.  (Motion at 1.)

## C.  Settlement Terms

The Settlement Agreement establishes a $13,050,000 gross settlement fund.  (SA § 2.26.)  From this fund, Class Counsel may seek recovery of attorneys' fees in an amount not to exceed $4,350,000 and costs in an amount not to exceed $1,500,000.  (*Id.* § 7.1)  Class Counsel may also seek compensation for the Class Representatives in an amount not to exceed $25,000 per Class Representative.  (*Id.*).  Expenses incurred in the administration of the Settlement Agreement will also be paid out of the gross settlement fund.  (*Id.* § 3.1.2.)

1    The Settlement Administrator will distribute the remaining amount to

2   Class Members on a *pro rata* basis, based on the Class Members' average

3   end-of-quarter plan balances from August 17, 2010 through December 31,

4   2022 (the "Class Period").  (*Id.* §§ 2.13, 6.3.2.)  These distributions will be

5   made no later than 120 days after the final approval of the Settlement

6   Agreement.  (*Id.* §§ 2.42, 5.8.)

7

8    There is no claims process for Class Members who are current

9   participants in the Plans ("Current Participants").  (*Id.* § 6.4.)  Current

10   Participants with a non-zero account balance will receive a credit to their

11   accounts.  (*Id.* § 6.4.4.)  Current Participants with a zero account balance

12   will receive a check.  (*Id.* § 6.5.)

13

14    There is a claims process for Class Members who are former

15   participants in the Plans ("Former Participants").  The Settlement

16   Administrator will provide Former Participants with a Former Participant

17   Claim Form.  (*Id.* § 3.4.2.)  Using this form, Former Participants may elect to

18   receive their share of the settlement fund directly in the form of a check, or

19   to rollover the amount into an eligible retirement plan.  (*Id.* § 6.6, Ex. 1.)

20   Only Former Participants who submit a Former Participant Claim Form

21   before the Claims Deadline set by the Court will receive a distribution from

22   the settlement fund.  (*Id.* §§ 2.5, 6.7.)

23

24    In addition to providing the monetary relief described above, USC will:

25   (1) instruct the current Plan recordkeepers that such recordkeepers "shall

26   not use information received as a result of providing the contracted services

4

to the Plans and/or the Plans' participants, to solicit the Plans' current participants for the purpose of cross-selling non-Plan products and services"; (2) "conduct a request for proposals for recordkeeping and administrative services"; (3) "continue to provide annual training to the Plans' fiduciaries regarding their fiduciary duties under ERISA"; (4) "continue using a qualified investment consultant"; and (5) continue holding Retirement Plan Oversight Committee meetings consistent with the Committee's charter dated March 2, 2016.  (*Id.* §§ 10.2-10.6.)

### D.   Notice Procedures

The Settlement Administrator shall send to the last known email address of each Class Member the Settlement Notice, in a form substantially similar to Exhibits 3 and 4 of the Settlement Agreement.  (*Id.* § 3.4.1.)  If there is no email address on file or if the email is returned as undeliverable, the Settlement Administrator shall send the same notice by first-class mail to the physical address on file.  (*Id.*)  The Settlement Administrator shall use reasonable efforts to locate any Class Member whose mailed notice is returned and attempt to re-send the documents one additional time.  (*Id.*)

The Settlement Administrator shall also establish a Settlement Website containing: (1) the Complaint; (2) the Settlement Agreement and its Exhibits; (3) the Settlement Notice; (4) the Former Participants Claim Form; (5) the Motion for Attorneys' Fees and Costs and Award of Compensation to Class Representatives; (6) any Court orders related to the Settlement; (7) any amendments or revisions to these documents; and (8) any other

documents or information mutually agreed upon by the Settling Parties.  (*Id.* § 12.3.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  "[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008).  The Court's review of the settlement is meant to be "extremely limited" and should consider the settlement as a whole.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

At the preliminary approval stage, the Court need only consider whether the proposed settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Harris v. Vector Mktg. Corp.*, No. 08-05198, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011); *see also Moppin v. Los Robles Reg'l Med. Ctr.*, No. 15-01551, 2016 WL 7479380, at *8 (C.D. Cal. Sept. 12, 2016) ("At the Preliminary Approval phase, the Court need only decide whether the settlement is potentially fair."); *In re Tableware Antitrust Litig.*, 484 F. Supp.

2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (citing Federal Judicial Center, Manual for Complex Litigation § 30.44 (2d ed. 1985)).

### III.   DISCUSSION

#### A.   Class Certification

The Court has already certified a class in this matter under Rule 23(b)(1).  (Doc. No. 202.)  The Settlement Class differs from the previously certified class in that it includes participants and beneficiaries of the Plans from August 17, 2010 through December 31, 2022 instead of participants and beneficiaries of the Plans from August 17, 2010 through the date of judgment.  (*Compare* SA § 2.9 *with* Doc. No. 202 at 28.)  As the Settlement Class does not differ materially from the previously certified class, and as this minor change does not alter the Court's reasoning underlying its earlier decision to grant class certification, the Court conditionally certifies the proposed Settlement Class pursuant to Rule 23(b)(1) for purposes of settlement.

#### B.   Fairness, Adequacy, and Reasonableness of the Settlement

Plaintiffs seek preliminary approval of the Settlement Agreement. Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, reasonable, and accurate."  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quoting *Hanlon*, 150 F.3d at 1026).  At the preliminary approval stage, a full "fairness hearing" is not required.  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Rather, the inquiry is whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not

improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.*

### 1.   Product of Serious, Informed, Non-Collusive Negotiations

To approve the Settlement Agreement at this stage, the Court must find first it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Hanlon*, 150 F.3d at 1027.  Three factors may raise concerns of collusion: (1) "when counsel receive[s] a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds"; and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

None of the three *Bluetooth* factors that raise concerns of collusion are present here.  Moreover, the Court finds that the Settlement Agreement is the product of serious, informed, and arms-length negotiations.  This case was filed on August 17, 2016, and as discussed above, the parties have since: produced extensive information through written discovery; litigated several motions; participated in two mediation sessions; and engaged in several rounds of negotiation, resulting in the finalization of the Settlement Agreement.  This factor thus weighs in favor of preliminary approval.

2.   <u>Obvious Deficiencies</u>

The Court finds that the Settlement Agreement on its face does not have obvious deficiencies, and thus finds that this factor weighs in favor of preliminary approval.

3.   <u>Preferential Treatment to Class Representatives or Segments of Class</u>

The proposed Settlement Agreement does not improperly grant preferential treatment to the Class Representatives or any segments of the class.  Although the Court has some concerns regarding the Class Representatives' service awards—as discussed below—those concerns are insufficient to make this factor weigh against preliminary approval and can be addressed in more detail at the final approval hearing.

4.   <u>Range of Possible Approval</u>

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. Nov. 17, 2009).

Moreover, to evaluate whether a settlement is fundamentally fair, adequate, and reasonable, the Court considers the factors that ultimately inform final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in

settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *Harris*, 2011 WL 1627973, at *7 (citing *Hanlon*, 150 F.3d at 1026).

    i.   <u>Strength of Plaintiffs' Case and Future Risk</u>

On August 27, 2019, the Court dismissed Plaintiffs' claims of disloyalty under 29 U.S.C. § 1104(a)(1)(A) and claims of prohibited transactions under 29 U.S.C. § 1106(a)(1).  (Doc. No. 175.)  Plaintiffs remaining claims alleged that Defendants violated 29 U.S.C. § 1104(a)(1)(B) by causing the Plans to pay excessive recordkeeping fees and including imprudent investment options as Plan investments.  (*Id.*)

Although these claims allege tens of millions of dollars in damages, the Court agrees with Class Counsel that Plaintiffs faced the risk of losing at trial and the possibility that a favorable verdict would be appealed.  (Motion at 12-13.)  Given the relative strength of Plaintiff's claims, as well as the risks and costs associated with continued litigation and a corresponding delay in recovery, the Settlement Agreement's terms appear to be reasonable.  These factors thus favor preliminary approval.

    ii.   <u>Extent of Discovery Completed and Stage of the Proceedings</u>

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

10

1   As noted above, the parties litigated diligently since August 2016,

2   engaging in extensive discovery and motion practice. Accordingly, the Court

3   finds this factor weighs in favor of preliminary approval.

4

5       iii.   Experience and Views of Counsel

6   Class Counsel have ample experience litigating class actions similar

7   to this case and have demonstrated the ability to prosecute vigorously on

8   behalf of the class members.  (*See* Doc. No. 150-2.)  Accordingly, the Court

9   finds this factor weighs in favor of preliminary approval.

10

11       iv.   Presence of a Governmental Participant and Reaction of the

12           Class Members to a Proposed Settlement

13   As there is no governmental participant in this action, and as the

14   parties have not yet provided notice to the class members, these factors are

15   inapposite for the purposes of preliminary approval.

16

17       v.   The Amount Offered in the Settlement

18   For a settlement to be fair and adequate, "a district court must

19   carefully assess the reasonableness of a fee amount spelled out in a class

20   action settlement agreement."  *Staton*, 327 F.3d at 963.

21

22       a.   Attorney's Fees

23   When evaluating attorneys' fees, the Ninth Circuit holds "the district

24   court has discretion in common fund cases to choose either the percentage-

25   of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d

26

United States District Court
Central District of California

11

1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295-96 (9th Cir.1994)).

When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases.  *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048-50).

Class Counsel intend to seek no more than $4,350,000 in attorneys' fees, representing one-third of the gross settlement amount.  (Motion at 8; SA § 7.1.)  Although this number exceeds the 25% benchmark, the Court is likely to find the attorneys' fees reasonable at the final approval hearing. Class Counsel have diligently litigated for over six years on a contingency fee basis, and have secured a favorable recovery for the class members. These and other factors will likely warrant an upward departure from the benchmark.

b.      Costs

Class Counsel intend to seek no more than $1,500,000 in costs. (Motion at 8; SA § 7.1.)  Class Counsel have not attached any accounting of past costs or expenses.  The Court will therefore revisit the costs request at the time the parties seek final approval of the settlement.

c.      Incentive Award

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'" *Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the

13

personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995). "Courts have generally found that $5,000 incentive payments are reasonable." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Class Counsel intend to seek no more than $25,000 in incentive awards for each of the eight Class Representatives. (Motion at 7; SA § 7.1.) Class Counsel, however, have not provided any information regarding the "actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of ] workplace retaliation." *Staton*, 327 F.3d at 977. The Court therefore declines to approve the incentive award at this stage and will revisit the incentive award request at the time the parties seek final approval of the settlement.

> d.   Administration Expenses

The Court has concerns with the parties' proposed Administration Expenses as they are currently framed. First, the Settlement Agreement does not provide an estimate of the anticipated Administration Expenses. Second, the Settlement Agreement allows the Settlement Administrator to set aside a contingency reserve for future Administrative Expenses, where any unspent amount in the reserve will be paid to the Plans for the benefit of current, but not former, Plan participants. (SA §§ 5.8, 6.13.)

The Court will revisit the Administrative Expenses request at the time the parties seek final approval of the settlement and will approve the Administrative Expenses only if it determines that the amounts requested, including those to be held in reserve, are reasonable.

5.   Conclusion Based on Review of *Hanlon* Factors

As most of the *Hanlon* factors weigh in favor of preliminary approval, the Court finds that the proposed settlement is "within the range of possible approval" and that notice should be sent to class members.  *Vasquez*, 670 F. Supp. 2d at 1125.

Nevertheless, the Court stresses that it is unlikely to approve the incentive awards or the Administrative Expenses in their current form unless additional information is provided prior to final settlement approval.

**C.   Notice Procedure**

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement.  Fed. R. Civ. P. 23(e)(1).  Plaintiff must provide notice that is "timely, accurate, and informative."  *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

1.   Notice Form

The Court accepts the proposed notice forms.  They explain: (1) the essential terms of the Settlement, including the definition of the Settlement Class and the method of distribution of settlement proceeds; (2) the rights of

15

Settlement Class Members to object to the Settlement, and specifics on the dates for exercising these rights; (3) the requirements for objecting and for making an appearance at the Final Approval Hearing; (4) the time and location of the Final Approval Hearing; (5) an explanation that each Settlement Class Member has the right to appear at the Final Approval Hearing; and (6) the Settlement Website address where additional information can be obtained.  (SA, Exs. 3, 4.)

   2.   Claims Administration

      Under the Settlement Agreement, Defendants will provide the Settlement Administrator with each Class Member's quarter-ending account balances during the Class Period.  (*Id.* § 6.3.1.)  Defendants will also provide the Settlement Administrator with other necessary information including, presumably, the names of the Class Members, and their email and/or physical addresses.  (*Id.*)  The Settlement Administrator will then send the Settlement Notice to each Class Member, send the Former Participant Claim Form to the Former Participants, establish the Settlement Website, and issue appropriate payments.  (*Id.* §§ 3.4.1, 3.4.2, 6.1, 12.3.)  The Settlement Administrator will also resend the documents that were returned as undeliverable in accordance with the procedures outlined in section 3.4.1 of the Settlement Agreement.  (*Id.* § 3.4.1.)

      The Court finds that the notice forms and proposed administration processes are adequate.

# IV.   CONCLUSION

For the reasons stated above, the Court finds that the proposed settlement is within the range of possible final approval.  Although the Court defers consideration of the request for attorneys' fees, costs, incentive awards, and administrative expenses, the Court **GRANTS** Plaintiffs' Motion for preliminary approval of class action settlement and conditionally certifies the class for settlement.

Within sixty (60) calendar days of this Order, Defendants shall provide the Settlement Administrator with the information described in section 6.3.1 of the Settlement Agreement.  Within thirty (30) calendar days of receiving this information, the Settlement Administrator shall disseminate notice using the templates portrayed in Exhibits 3 and 4 of the Settlement Agreement and establish the Settlement Website.

Class Members shall have until July 31, 2023 to object to the settlement.  The final approval hearing will be held on August 14, 2023 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated:    3/29/23

Virginia A. Phillips
Senior United States District Judge

17