**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Allen L. Munro et al, | Case No. 2:16-cv-06191-VAP-Ex |
| Plaintiffs, | |
| v. | **Order GRANTING Plaintiffs' Motion for Final Approval of Class Action Settlement (Doc. No. 380-1) and Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives (Doc. No. 368)** |
| University of Southern California et al, | |
| Defendants. | |

Plaintiffs Allen L. Munro et al. ("Plaintiffs") filed a Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives on June 30, 2023 ("Mot. for Attorneys' Fees," Doc. No. 368) and a Motion for Final Approval of Class Action Settlement on July 31, 2023 ("Mot. for Settlement Approval," Doc. No. 380-1.)  Defendants University of Southern California et al. ("Defendants") filed an opposition to the Motion for Attorneys' Fees on July 24, 2023 ("Opp'n to Mot. for Attorneys' Fees," Doc. No. 372), but did not oppose the Motion for Final Approval of Class Action Settlement.  Plaintiffs filed a reply in support of the Motion for Attorneys' Fees on July 31, 2023.  ("Reply ISO Mot. Attorneys' Fees," Doc. No. 379.)

After considering all the papers filed in support of, and in opposition to, the Motions, the Court GRANTS the Motion for Final Approval of Class

United States District Court
Central District of California

Action Settlement and GRANTS the Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives.

## I.   BACKGROUND

### A.   Procedural History

Plaintiffs are current or former employees of Defendant University of Southern California ("USC") and participate or have participated in the USC Defined Contribution Retirement Plan and/or the USC Tax-Deferred Annuity Plan (collectively, the "Plans").  On August 17, 2016, Plaintiffs filed a Class Action Complaint alleging that Defendants breached their fiduciary duties in relation to their administration of the Plans.  (Doc. No. 1.)

In the six years that followed, the parties engaged in extensive discovery and motion practice.  Plaintiffs reviewed over 1,260,000 pages of documents produced by USC and various third parties, and the parties took and defended the depositions of each of the eight named plaintiffs, eight fact witnesses, and eight expert witnesses.  (Mot. for Settlement Approval at 8.) The parties fully briefed a motion to compel arbitration, (Doc. No. 47), two motions to stay pending an appeal of the order denying the motion to compel, (Doc. No. 58, 84), a motion to certify class, (Doc. No. 150), a motion to dismiss, (Doc. No. 155), a motion to strike the demand for a jury trial, (Doc. No. 156), and multiple motions in limine (Doc. No. 264, 273, 325, 326).

On July 2, 2019, the parties participated in a mediation session with David Geronemus of JAMS.  (Doc. No. 148.)  On June 28, 2022, the parties participated in a second mediation session with Robert Meyer of JAMS. (Doc. No. 263.)  The parties continued to engage in settlement negotiations up until the day before trial.  (Mot. for Attorneys' Fees at 6.)

The trial was set to begin on January 24, 2023 at 8:30 a.m.  (Doc. No. 356.)  On the evening before trial, the parties notified the Court that they had reached a settlement in principle.  (Doc. No. 360.)  By then, the parties had designated 3,137 exhibits and 25 witnesses.  (Doc. Nos. 333, 335, 336.)

On February 23, 2023, the parties agreed to a Class Action Settlement Agreement ("Settlement Agreement" or "SA").  (Doc. No. 362-1.) The Court granted Preliminary Approval of the Class Action Settlement on March 29, 2023.  (Doc. No. 366.)  Plaintiffs now move for the final approval of the class action settlement and for approval of attorneys' fees, reimbursement of expenses, and incentive awards for class representatives.

**B.  Settlement Class**

The Settlement Class, as defined in the Settlement Agreement, consists of:

All participants and beneficiaries of the University of Southern California Defined Contribution Retirement Plan and the University of Southern California Tax-Deferred Annuity Plan from August 17, 2010

United States District Court
Central District of California

1   through December 31, 2022, excluding the members of the

2   Retirement Plan Oversight Committee.

3

4   (SA § 2.9.)  The Settlement Class comprises 58,846 participants and

5   beneficiaries of the Plans, of whom 42,609 are current participants in the

6   Plans and 16,237 are former participants.  (Mot. for Settlement Approval at

7   1.)

8

9   **C.  Settlement Terms**

10         The Settlement Agreement establishes a $13,050,000 gross

11   settlement fund.  (SA § 2.26.)  From this fund, Class Counsel may seek

12   recovery of attorneys' fees in an amount not to exceed $4,350,000 and

13   costs in an amount not to exceed $1,500,000.  (*Id.* § 7.1.)  Class Counsel

14   may also seek compensation for the Class Representatives in an amount

15   not to exceed $25,000 per Class Representative.  (*Id.*).  Expenses incurred

16   in the administration of the Settlement Agreement will also be paid out of the

17   gross settlement fund.  (*Id.* § 3.1.2.)

18

19         The Settlement Administrator will distribute the remaining amount to

20   Class Members on a *pro rata* basis, based on the Class Members' average

21   end-of-quarter plan balances from August 17, 2010 through December 31,

22   2022 (the "Class Period").  (*Id.* §§ 2.13, 6.3.2.)  These distributions will be

23   made no later than 120 days after the final approval of the Settlement

24   Agreement.  (*Id.* §§ 2.42, 5.8.)

25

26

4

There is no claims process for Class Members who are current participants in the Plans ("Current Participants").  (*Id.* § 6.4.)  Current Participants with a non-zero account balance will receive a credit to their accounts.  (*Id.* § 6.4.4.)  Current Participants with a zero account balance will receive a check.  (*Id.* § 6.5.)

There is a claims process for Class Members who are former participants in the Plans ("Former Participants").  The Settlement Administrator will provide Former Participants with a Former Participant Claim Form.  (*Id.* § 3.4.2.)  Using this form, Former Participants may elect to receive their share of the settlement fund directly in the form of a check, or to rollover the amount into an eligible retirement plan.  (*Id.* § 6.6, Ex. 1.)  Only Former Participants who submit a Former Participant Claim Form before the Claims Deadline set by the Court will receive a distribution from the settlement fund.  (*Id.* §§ 2.5, 6.7.)

In addition to providing the monetary relief described above, USC will: (1) instruct the current Plan recordkeepers that such recordkeepers "shall not use information received as a result of providing the contracted services to the Plans and/or the Plans' participants, to solicit the Plans' current participants for the purpose of cross-selling non-Plan products and services"; (2) "conduct a request for proposals for recordkeeping and administrative services"; (3) "continue to provide annual training to the Plans' fiduciaries regarding their fiduciary duties under ERISA"; (4) "continue using a qualified investment consultant"; and (5) continue holding

Retirement Plan Oversight Committee meetings consistent with the Committee's charter dated March 2, 2016.  (*Id.* §§ 10.2-10.6.)

## II.    LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."  Fed. R. Civ. P. 23(e).  A court must engage in a two-step process to approve a proposed class action settlement.  First, the court must determine whether the proposed settlement deserves preliminary approval.  *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).  Second, after notice is given to class members, the Court must determine whether final approval is warranted.  (*Id.*)  A court should approve a settlement pursuant to Rule 23(e) only if the settlement "is fundamentally fair, adequate and reasonable."  *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *accord In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

In the Ninth Circuit, courts must balance the following factors to determine whether a class action settlement is fair, adequate, and reasonable: (1) the strength of the plaintiffs' case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed

United States District Court
Central District of California

settlement.  *Torrisi*, 8 F.3d at 1375; *accord Hanlon*, 150 F.3d at 1026.  "In addition, the settlement may not be the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458.

"[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  When "the parties negotiate a settlement agreement before the class has been certified, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'"  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012).  Because a class was not certified prior to the parties' settlement, the Court applies a "higher standard" and conducts a "more probing inquiry" in evaluating the fairness of the Settlement Agreement.  Further, the Court neither presumes the Settlement Agreement is fair nor that it is the product of non-collusive, arms-length negotiations in evaluating the applicable factors.

### III.    DISCUSSION

**A.  Plaintiffs' Motion for Final Approval of Class Action Settlement**

1.    <u>Product of Serious, Informed, Non-Collusive Negotiations</u>

To approve the Settlement Agreement at this stage, the Court must first find that it is "not the product of fraud or overreaching by, or collusion between, the negotiating parties."  *Hanlon*, 150 F.3d at 1027.

1    The Court has carefully scrutinized the Settlement Agreement and

2    finds no signs of overt collusion.  Moreover, by the time the Settlement

3    Agreement was signed, the parties had litigated this case for over six years.

4    During that time, they produced extensive information through written

5    discovery, litigated several motions, participated in two mediation sessions,

6    and engaged in several rounds of negotiation.  These circumstances

7    strongly suggest that the Settlement Agreement was the product of serious,

8    informed, and arms-length negotiations.

9

10    The Court further finds that none of the potential "subtle signs of

11    collusion" identified by the Ninth Circuit are present in the Settlement

12    Agreement.  *Roes*, 944 F.3d at 1049.  These potential signs include "(1)

13    when counsel receive a disproportionate distribution of the settlement; (2)

14    when the parties negotiate a 'clear sailing' arrangement (i.e., an

15    arrangement where defendant will not object to a certain fee request by

16    class counsel); and (3) when the parties create a reverter that returns

17    unclaimed [funds] to the defendant."  *Id.* (quotations omitted).  As discussed

18    below, counsel do not seek, and will not receive, a disproportionate

19    distribution of the settlement.  Additionally, the Settlement Agreement does

20    not contain the type of "clear sailing arrangement" that is cause for concern.

21    Only "a clear sailing arrangement providing for the payment of attorneys'

22    fees separate and apart from class funds" is potentially indicative of

23    collusion.  *In re Bluetooth*, 654 F.3d at 947; *Rodriguez v. W. Publ'g Corp.*,

24    563 F.3d 948, 961 n.5 (9th Cir. 2009) (defendant's agreement to not contest

25    requested attorneys' fees from a capped settlement fund "does not signal

26    the possibility of collusion").  Under the Settlement Agreement, approved

8

attorneys' fees are paid from a fixed settlement fund, and Defendants'
obligations are not affected by the amount of fees awarded.  (SA § 7.1).
Finally, no portion of the settlement fund can revert to Defendant.  (*Id.* § 6).

The Court therefore finds that parties engaged in arm's length,
serious, informed, and non-collusive negotiations.  This factor weighs in
favor of final approval.

2.   Strength of Plaintiffs' Case and Future Risk

On August 27, 2019, the Court dismissed Plaintiffs' claims of
disloyalty under 29 U.S.C. § 1104(a)(1)(A) and claims of prohibited
transactions under 29 U.S.C. § 1106(a)(1).  (Doc. No. 175.)  Plaintiffs
remaining claims alleged that Defendants violated 29 U.S.C. § 1104(a)(1)(B)
by causing the Plans to pay excessive recordkeeping fees and including
imprudent investment options as Plan investments.  (*Id.*)

Although these claims allege tens of millions of dollars in damages,
the Court agrees with Class Counsel that Plaintiffs faced the risk of losing at
trial and the possibility that a favorable verdict would be appealed.  (Mot. for
Settlement Approval at 5.)  Given the relative strength of Plaintiffs' claims,
as well as the risks and costs associated with continued litigation and a
corresponding delay in recovery, the Settlement Agreement's terms appear
reasonable.  These factors thus favor final approval.

### 3.   Amount Offered in the Settlement

The Settlement Agreement establishes a gross settlement fund of $13,050,000.  (SA § 2.26.)  This represents approximately 36% of the $36 million that Plaintiffs were seeking for their recordkeeping claim.  (Doc. No. 348-1, ¶ 210.)  Given that the Court had excluded Plaintiffs' damages experts with respect to their imprudent investment claim (Doc. Nos. 317, 355), and given the complexities and uncertainty involved in proving the remaining recordkeeping claim, the Court determines that $13,050,000 represents a reasonable settlement recovery.[1]

As the amount offered is offset by fees, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."  *Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003).  As discussed in more detail below, the Court finds the fees appropriate and therefore determines that the amount offered in settlement weighs in favor of final approval.

### 4.   Extent of Discovery Completed and Stage of the Proceedings

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellullar Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

---

[1] The Court notes that the Settlement Agreement provides non-monetary remedies as well.  (SA §§ 10.2-10.6.)

As noted above, the parties litigated diligently since August 2016, engaging in extensive discovery and motion practice.  Accordingly, the Court finds this factor weighs in favor of final approval.

5.   Experience and Views of Counsel

Class Counsel have ample experience litigating class actions similar to this case and have demonstrated the ability to prosecute vigorously on behalf of the class members.  (*See* Doc. No. 368-2.)  Accordingly, the Court finds this factor weighs in favor of final approval.

6.   Presence of a Governmental Participant

As there is no governmental participant in this action, this factor is irrelevant for the purposes of final approval.

7.   Reaction of Class Members to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members."  *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529.

Following preliminary approval of the settlement by the Court, the Settlement Administrator distributed the approved class notice to the class members.  (Mot. for Settlement Approval at 10.)  Class members had until July 31, 2023 to object to the settlement.  (Doc. No. 366 at 17.)  Only one class member objected to the settlement before the deadline.  (Mot. for Settlement Approval at 3.)

The single objection generally states that the settlement amount is insufficient to compensate him for his financial harm, and that the settlement terms are too vague for class members "to understand what they're being asked to agree to."  (Doc. No. 375.)  These conclusory statements do not provide a basis for rejecting the settlement.  First, the objection provides no explanation as to why the settlement amount is inadequate.  *See In re Skilled Healthcare Grp., Inc. Sec. Litig.*, No. 09-CV-5416-DOC-RZx, 2011 WL 280991, at *6 (C.D. Cal. Jan. 26, 2011) (overruling an objection because "[the objector's] hope for a greater settlement amount—a desire unsupported by specific facts—appears to be based on little more than hypothesis or speculation"); *Smith v. CRST Van Expedited, Inc.,* No. 10-CV-1116- IEG-WMCx, 2012 WL 5873701, at *2 (S.D. Cal. Nov. 20, 2012) (overruling an objection that made "no showing of what would be sufficient or why").  Second, as this class has been certified under Federal Rule of Civil Procedure 23(b)(1), (*see* Doc. no. 202), class members are not being asked to agree to anything and have no right out to opt out.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 361-62 (2011).  The Court has moreover reviewed the Settlement Notice and finds that the terms of the Settlement Agreement have been clearly stated.  (*See* Doc. No. 362-1, Ex. 3.)  The Court accordingly OVERRULES the sole objection to the Settlement Agreement.

As only a single class member out of 58,846 has objected to the Settlement Agreement, and as the Court has determined that the objection lacks merit, this factor weighs in favor of approval.

United States District Court
Central District of California

United States District Court
Central District of California

8.   <u>Balancing the Factors</u>

All of the relevant factors favor approval.  The Court therefore finds that the proposed Settlement Agreement is fair, reasonable, and adequate and **GRANTS** final approval of the Settlement Agreement.

**B.   Plaintiffs' Motion for Attorneys' Fees**

When evaluating attorneys' fees, "the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method."  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)).  When using the percentage-of-the-fund method, "courts typically set a benchmark of 25% of the fund as a reasonable fee award and justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. May 14, 2013); *see Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The percentage may be adjusted upward or downward based on: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards made in similar cases.  *Monterrubio*, 291 F.R.D. at 455 (citing *Vizcaino*, 290 F.3d at 1048–50).  But "[e]xcept in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class." *Lowery v. Rhapsody Int'l, Inc.*, No. 22-15162, 2023 WL 4933917, at *7 (9th Cir. Aug. 2, 2023).  This is because the "[t]he touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."  *Id.* at *2.

Class Counsel seek $4,350,000 in attorneys' fees, representing one-third of the gross settlement amount.  (Mot. for Attorneys' Fees at 1.)  This number does not exceed the benefit provided to the class.  And although this number exceeds the 25% benchmark, after considering the *Vizcaino* factors, the Court finds the attorneys' fees reasonable.

1.  Results Achieved

This case involved novel and difficult questions of law.  As other courts have recognized, "ERISA 401(k) fiduciary breach class actions involve complex questions of law and have not been widely litigated to this point."  *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794-AB-JCx, 2020 WL 5668935, at *4 (C.D. Cal. Sept. 18, 2020) (citation omitted).  The present litigation therefore involved a real risk of little to no recovery, and the $13,050,000 gross settlement amount represents a favorable outcome for class members.

Moreover, after accounting for the requested $4,350,000 in attorneys' fees and $1,184,891 in litigation expenses, the Settlement Agreement provides $7,515,109 in monetary benefit to the Class, which exceeds the fee award.  This factor accordingly weighs in favor of an upward departure from the benchmark.

2.  Risks of Litigation

Class Counsel assumed considerable risk by representing Plaintiffs.  The litigation lasted six years, and during that time, Class Counsel faced a motion to compel arbitration (Doc. No. 47), a motion to dismiss (Doc. No.

14

155), and an opposition to their motion to certify the class (Doc. No. 180), any of which could have derailed the case.  Moreover, if the case went to trial, Class Counsel would have undertaken the non-trivial burden of proving claims involving a complex set of facts where the outcome was far from certain.  This factor also weighs in favor of an upward departure from the benchmark.

### 3.   Skill Required and Quality of the Work

Class Counsel have considerable experience litigating similar class actions.  (*See* Doc. No. 368-2).  Moreover, as discussed above, they achieved a favorable result in this case after engaging in extensive discovery and motion practice.  Their work favors an upward departure from the 25% benchmark.

### 4.   Contingent Nature of the Fees and Burdens Carried

As Class Counsel pursued this case on a contingency fee basis, they assumed a risk that they would not be compensated for their work.  Moreover, while prosecuting this action, Class Counsel not only forewent the collection of attorneys' fees, they also invested over one million dollars in litigation expenses over the course of six years.  (Mot. for Attorneys' Fees at 20.)  The risk of nonrecovery, as well as the burden of having to front over one million dollars in costs, weighs slightly in favor of an upward deviation from the benchmark.

15

### 5.   Awards Made in Similar Cases

Although the Ninth Circuit has established "25% of the common fund as a benchmark award for attorney fees," *Hanlon*, 150 F.3d at 1029, it has affirmed one-third of the common fund awards in cases involving complex issues.  *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).  Courts in this district have similarly approved one-third fee awards in cases involving protracted ERISA litigation.  *See Marshall*, 2020 WL 5668935, at *9; *Waldbuesser v. Northrop Grumman Corp.*, No. 06-CV-6213-AB-JCx, 2017 WL 9614818, at *6 (C.D. Cal. Oct. 24, 2017).  This factor accordingly weighs in favor of an upward departure from the 25% benchmark.

### 6.   Lodestar Cross-Check

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee.  *See Vizcaino*, 290 F.3d at 1050.  "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."  *Id.*  "Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."  *Id.*

Here, Class Counsel report that they invested 13,285.2 attorney hours and 1,393.3 non-attorney hours on this case, which, when billed at their proposed rates of $635 to $1,370 per hour for attorneys and $190 to $425 for non-attorneys, results in a total expenditure of $13,713,525. ("Wolff Decl.," Doc. No. 368-3, ¶ 13.)  Although Class Counsel have not

United States District Court
Central District of California

provided detailed billing records,[2] this amount far exceeds the $4,350,000 in requested attorneys' fees.  Thus, even if the Court were to apply a moderate downward adjustment of the attorneys' hourly rates, or apply a lodestar multiplier as low as 0.33, the resulting lodestar amount would still exceed the one-third of the common fund that Class Counsel seek.  The lodestar cross-check therefore supports a one-third fee award.

7.   Conclusion

As all of the *Vizcaino* factors weigh in favor of an upward departure from the 25% attorneys' fee award benchmark, and as the lodestar cross-check supports a one-third fee award, the Court **GRANTS** Class Counsel attorneys' fees in the amount of $4,350,000.

**C.   Costs**

Class Counsel seek reimbursement of $1,184,891 in litigation costs. (Mot. for Attorneys' Fees at 20.)  These include various court fees, deposition fees, expert and consultant fees, mediation fees, travel and lodging costs, and other trial-related expenses.  (*See* Wolff Decl. ¶¶ 19-27). The Court accepts the stated fees and costs, and finds the reimbursement of those expenses to be reasonable.  The Court therefore **APPROVES** the reimbursements in the amount sought.

---

[2] Class Counsel have instead indicated a willingness to provide more detailed records "upon request."  (Wolff Decl. ¶ 14.)

United States District Court
Central District of California

United States District Court
Central District of California

### D.   Administrative Expenses

According to Class Counsel, the Settlement Administrator has incurred $88,687.21 in administrative expenses, anticipates incurring $43,848.25 in administrative expenses, and seeks to reserve $150,000 for unanticipated future administrative expenses.  (Mot. for Settlement Approval at 11.)  The Court finds these amounts reasonable and **APPROVES** the $88,687.21 in already incurred administrative expenses.  The Court further authorizes the Settlement Administrator to reserve $193,848.25 from the gross settlement fund to pay for anticipated and unanticipated future administrative expenses, with any unspent money to be distributed in accordance with the Settlement Agreement.

### E.   Incentive Awards

Named plaintiffs "are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977.  Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez v. W. Publ'g Corp*., 563 F.3d 948, 958–59 (9th Cir. 2009).

"The district court must evaluate [incentive] awards individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in

18

pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation.'"
*Staton*, 327 F.3d at 977.

Courts may also consider: the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation; and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. Aug. 16, 1995).  "Courts have generally found that $5,000 incentive payments are reasonable."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. Jun. 24, 2008) (citations omitted).

Class Counsel request a $25,000 incentive award for each of the eight Class Representatives.  (Mot. for Attorneys' Fees at 21.)  Defendants filed an opposition, arguing the Court should approve no more than $5,000 for each Class Representative.  (*See generally* Opp'n to Mot. for Attorneys' Fees.)  In response, Class Counsel assert, among other things, that Defendants lack standing to object to the incentive awards.  (Doc. No. 379 at 1.)

Even if Defendants lack standing to object to the incentive awards, the Court has an independent duty to evaluate the incentive awards in order to protect the interests of the Class.  *Staton*, 327 F.3d at 977.  Having done so, the Court finds the requested $25,000 incentive payments to be reasonable.  The Class Representatives each averred that they spent

between 20 to 60 or more hours producing documents, assisting in the drafting of responses to interrogatories, and preparing for and attending depositions.  (Doc. Nos. 368-4–358-11.)  More importantly, even though the Class Representatives only invested a modest number of hours working directly on the case, they made themselves available to Class Counsel for over six years of litigation and were ultimately prepared to testify at trial. The protracted litigation weighs in favor of a larger incentive award.  *See Waldbuesser*, 2017 WL 9614818, at *8 ("When litigation has been protracted, an incentive award is especially appropriate.").

Class Counsel also note that none of the class members objected to the incentive awards.  (Reply ISO Mot. Attorneys' Fees at 1.)  Combined, the requested incentive awards will reduce the average recovery of each class member by less than $4.  Considering that the efforts of the Class Representatives were necessary to secure, on average, over $120[3] in benefits per class member, the Court determines the requested incentive awards to be reasonable.  Other district courts have approved similar incentive awards in ERISA class action settlements involving similar recovery amounts.  *See Marshall*, 2020 WL 5668935, at *12 (approving $25,000 for each of six class representatives in a case involving a $12,375,000 settlement and over 167,000 class members); *Waldbuesser*, 2017 WL 9614818, at *8 (approving $25,000 for each of four class representatives in a case involving a $16,750,000 settlement and

_____

[3] This number is computed by taking the gross settlement amount of $13,050,000, subtracting $4,350,000 in attorneys' fees and $1,184,891 in litigation expenses, and dividing by 58,846, the total number of class members.

United States District Court
Central District of California

approximately 210,000 class members); *Clark v. Duke Univ.*, No. 1:16-CV-1044, 2019 WL 2579201, at \*5 (M.D.N.C. June 24, 2019) (approving $25,000 for each of two class representatives and $30,000 for each of four other class representatives in a case involving a $10,650,000 settlement and over 58,000 class members).

The Court accordingly **APPROVES** a $25,000 incentive award for each of the eight Class Representatives.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

United States District Court
Central District of California

21

# IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion for Final Approval of Class Action Settlement and **GRANTS** the Motion for Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards for Class Representatives.  The Court awards attorneys' fees in the amount of $4,350,000, costs in the amount of $1,184,891, and incentive awards in the amount of $200,000 ($25,000 for each of the eight Class Representatives). The Court additionally approves the $88,687.21 in administrative expenses incurred by the Settlement Administrator and authorizes the Settlement Administrator to reserve $193,848.25 from the gross settlement fund to pay for anticipated and unanticipated future administrative expenses, with any unspent money to be distributed in accordance with the Settlement Agreement.

**IT IS SO ORDERED.**

Dated:    8/24/23

Virginia A. Phillips
Senior United States District Judge

United States District Court
Central District of California

22